Opinion issued August 12, 2004



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01056-CV




EPGT TEXAS PIPELINE, L.P., SUCCESSOR TO PG&E TEXAS
PIPELINE, L.P., Appellant

V.

HARRIS COUNTY FLOOD CONTROL DISTRICT, Appellee




On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 98-55348




O P I N I O N

          EPGT Texas Pipeline, L.P., successor to PG&E Texas Pipeline, L.P. (PG&E)



appeals a final summary judgment granted in favor of the appellee, Harris County
Flood Control District (“HCFCD”). PG&E seeks damages resulting from the
herniation and displacement of its gas pipeline in the City of South Houston, as a
result of HCFCD’s nearby drainage excavation project. We conclude that (1) the
Texas Tort Claims Act (“TTCA”) governs sovereign immunity for claims in tort
against the State and the political subdivisions of the State, and PG&E does not allege
a claim in tort for which the TTCA provides a waiver of immunity; and (2) the Water
Code waives HCFCD’s immunity as to PG&E’s breach of contract claim, but the trial
court properly granted summary judgment, because PG&E is not an intended third
party beneficiary to the contract upon which it bases its claim. We therefore affirm
the summary judgment as to PG&E’s tort and contract claims. We reverse and render
the summary judgment on PG&E’s inverse condemnation claim, however, as the
Harris County Courts at Law have exclusive jurisdiction over such a claim, and the
trial court thus lacked jurisdiction to enter summary judgment on the claim.
The Facts and the Procedural History
          In 1961, HCFCD acquired an easement and a perpetual license from the
Galveston, Houston, and Henderson Railroad Company (the “Railroad”), for real
property located in Berry Bayou, Harris County. PG&E owns, operates, and
maintains a natural gas pipeline lying in an adjacent right of way, acquired from its
predecessor-in-interest, the Lo-Vaca Gathering Company. 
          In 1997, HCFCD executed a construction contract with Ramex Construction
Company (Ramex), to improve drainage in the existing Berry Bayou ditch. PG&E’s
pipeline runs across and parallel to the Ramex construction site. During construction,
Ramex used motor-driven vehicles to remove two concrete double-box culvert
structures that ran parallel to the PG&E pipeline. Ramex also removed soil
supporting both the concrete double-box culverts and PG&E’s pipeline. Ramex’s
actions removed the lateral support of the pipeline, causing it to shift sideways and
downward four feet. The pipeline sustained a lateral bulge of approximately twelve
and one-half feet along a 500 foot portion of the pipeline. Because of these events,
PG&E had to remove the pipeline from service and repair it.
          In November 1998, PG&E sued both HCFCD and Ramex for breach of
contract, declaratory judgment, strict liability for removal of naturally necessary
support, and negligence. PG&E also asserted an inverse condemnation claim solely
against HCFCD. In a second amended petition, PG&E pleaded that the TTCA
conferred jurisdiction upon the trial court. In a later supplemental amended petition,
PG&E further alleged that HCFCD had consented to suit for breach of contract, based
upon section 49.006 of the Texas Water Code. PG&E sought $488,251.78 in actual
damages for repairs and lost profits, and $500,000 in exemplary damages, as well as
attorney’s fees and interest. HCFCD counterclaimed for trespass and negligence,
alleging that PG&E damaged the bayou, resulting in additional project costs to it of
up to $401,699.65.
          In December 2001, HCFCD filed a traditional and a no-evidence motion for
summary judgment. In March 2002, the trial court granted HCFCD’s motions. 
PG&E appeals the trial court’s final judgment granting HCFCD’s motions for
summary judgment.



HCFCD’s Sovereign Immunity
          A motion for summary judgment may raise a challenge to a trial court’s
subject-matter jurisdiction. City of Hedwig Village Planning & Zoning Comm’n v.
Howeth Invs., Inc., 73 S.W.3d 389, 391 (Tex. App.—Houston [1st Dist.] 2002, no
pet.). A plaintiff then bears the burden of alleging facts affirmatively showing that
a trial court has subject-matter jurisdiction. Tex. Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Bland ISD v. Blue, 34 S.W.3d 547, 554
(Tex. 2000); Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993). A court should take the plaintiff’s allegations to be true and construe all
inferences in favor of jurisdiction. Tex. Ass’n of Bus., 852 S.W.2d at 446. The
question whether a trial court has subject-matter jurisdiction over a claim is one of
law, and thus we review it de novo. Miranda, 133 S.W.3d at 226.
          Under the common-law doctrine of sovereign immunity, a unit of government
cannot be sued without its consent. State v. Terrell, 588 S.W.2d 784, 785 (Tex.
1979); Dillard v. Austin Indep. Sch. Dist., 806 S.W.2d 589, 592 (Tex. App.—Austin
1991, writ denied). Sovereign immunity protects a governmental unit in two basic
ways. First, the state is immune from suit against it, regardless of the state’s liability. 
Federal Sign v. Tex. Southern Univ., 951 S.W.2d 401, 405 (Tex. 1997); Dillard, 806
S.W.2d at 592. Second, the state also is immune from liability, even if the state
otherwise has consented to be sued. Federal Sign, 951 S.W.2d at 405; Dillard, 806
S.W.2d at 592. “Immunity from suit bars a suit against the State unless the State
expressly gives its consent to the suit,” while “[i]mmunity from liability protects the
State from judgments even if the Legislature has expressly given consent to the suit.” 
Federal Sign, 951 S.W.2d at 405. If applicable, sovereign immunity shields
governmental entities from liability, including protection from suit for the vicarious
acts of government agents or employees acting in the scope of their employment. 
Bennet v. Tarrant County Water & Control Imp. Dist. No. 1, 894 S.W.2d 441, 450
(Tex. App.—Fort Worth 1995, writ denied). Those governmental entities immune
from suit include statutorily created special purpose districts like HCFCD. Id. The
TTCA waives sovereign immunity from liability in certain circumstances, and
correspondingly waives immunity from suit, to the extent immunity from liability has
been waived under the Act. Tex. Civ. Prac. & Rem. Code Ann. § 101.021, .025
(Vernon 1997). 
          Here, HCFCD moved for summary judgment claiming immunity from suit. 
PG&E thus must allege facts sufficient to show that HCFCD waived immunity to the
causes of action PG&E asserts. PG&E maintains that HCFCD has waived immunity
from suit pursuant to section 101.021(1) of the TTCA and section 49.006 of the Texas
Water Code. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021; Tex. Water Code
Ann. § 49.006 (Vernon 2000). 
Standard of Review
          Summary judgment for a defendant is proper if the defendant negates at least
one element of each of the plaintiff’s theories of recovery, or pleads and conclusively
establishes each element of an affirmative defense. Science Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997). A “no evidence” motion for summary
judgment is proper if, after adequate time for discovery, the movant shows that the
nonmovant has produced no evidence on at least one essential element of the
nonmovant’s theory of recovery. See Tex. R. Civ. P. 166a(I); Flameout Design &
Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.—Houston [1st Dist.] 1999, no pet.). When reviewing a summary judgment, we
view all evidence in a light favorable to the nonmovant, and indulge every reasonable
inference in the nonmovant’s favor. Science Spectrum, 941 S.W.2d at 911. 
Sovereign immunity is an affirmative defense. Harris County v. Louvier, 956 S.W.2d
106, 107 (Tex. App.—Houston [14th Dist.] 1997, no pet.). 
          Thus, as movant on the affirmative defense of sovereign immunity, HCFCD
has the burden to establish all the essential elements of the defense as a matter of law. 
Montgomery v. Kennedy, 669 S.W.2d 309, 310–11 (Tex. 1984). Once a movant
establishes sovereign immunity as a matter of law, the burden of production shifts to
the non-movant to establish a waiver of immunity. See Medrano v. City of Pearsall,
989 S.W.2d 141, 144 (Tex. App.—San Antonio 1999, no pet.); Ager v. Wichita Gen.
Hosp., 977 S.W.2d 658, 660 (Tex. App.—Fort Worth 1998, no pet.); see also Casso
v. Brand, 776 S.W.2d 551, 556 (Tex. 1989) (burden does not shift to non-movant
unless movant establishes defense as matter of law). Though the burden of
production shifts, the burden of proof remains with the movant to conclusively
establish its entitlement to summary judgment on its affirmative defense as a matter
of law. See Zale Corp. v. Rosenbaum, 520 S.W.2d 889, 891 (Tex. 1975); Garza v.
Williams Bros. Constr. Co., 879 S.W.2d 290, 295 (Tex. App.—Houston [14th Dist.]
1994, no writ); see also Jenkins v. Guardian Indus. Corp., 16 S.W.3d 431, 439 (Tex.
App.—Waco 2000, pet. denied); Rios v. Texas Commerce Bancshares, Inc., 930
S.W.2d 809, 818 (Tex. App.—Corpus Christi 1996, writ denied).
 
The Negligence Claim
          The TTCA waives sovereign immunity for property damage in the following
circumstances: (1) an injury caused by a government employee’s operation or use of
a motor-driven vehicle or motor-driven equipment and (2) the government employee
would be personally liable to the claimant according to Texas law. Tex. Civ. Prac.
& Rem. Code Ann. § 101.021(1)(A) - (B) (Vernon 1997). Relying on these
provisions, PG&E contends that the Legislature has waived HCFCD’s sovereign
immunity as to PG&E’s negligence claim for property damage. HCFCD responds
that it did not waive its sovereign immunity as to PG&E’s negligence claims, because
the undisputed facts show that no State employee operated a motor-driven vehicle
that caused the damage to PG&E’s pipeline. Rather, Ramex, an independent
contractor, operated the motor-driven vehicles. The waiver of immunity provision
in the TTCA thus does not apply under these facts. PG&E replies that a fact issue
exists regarding whether Ramex acted as HCFCD’s independent contractor — as
HCFCD contends — or whether Ramex was a de facto state “employee,” — as PG&E
contends — thus falling within the TTCA waiver of immunity.
          Section 101.021 of the TTCA provides that a governmental unit is liable for:
property damage, personal injury, and death proximately caused
by the wrongful act or omission or the negligence of an employee
acting within his scope of employment . . . .

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (emphasis added). 
          The TTCA further defines “employee” as
a person, including an officer or agent, who is in the paid service
of a governmental unit by competent authority, but does not
include an independent contractor, an agent or employee of an
independent contractor, or a person who performs tasks the
details of which the governmental unit does not have the legal
right to control.

Id. § 101.001(2) (Vernon Supp. 2004) (emphasis added). Thus, whether the trial
court properly granted summary judgment on PG&E’s tort claims depends on whether
fact issues exist as to Ramex’s status as an independent contractor. 
          In determining whether a worker is an employee or an independent contractor,
the focus is on who has the right to control the details of the work. Exxon Corp. v.
Tidwell, 867 S.W.2d 19, 21 (Tex. 1993). In determining whether Ramex is an
independent contractor, we examine: (1) the independent nature of its business; (2)
its obligation to supply necessary tools, supplies, and materials; (3) its right to control
the progress of the work; (4) the duration of its employment; and (5) the method by
which it is paid, whether by the time or by the job. Duran v. Furr’s Supermarkets,
Inc., 921 S.W.2d 778, 786 (Tex. App.—El Paso 1996, writ denied). A “possibility”
of control is not evidence of a right to control. Coastal Marine Serv. of Tex., Inc. v.
Lawrence, 988 S.W.2d 223, 226 (Tex. 1999). Determining whether a contract gives
a right of control is generally a question of law for the court, rather than a question
of fact for the jury. Dow Chem. Co. v. Bright, 89 S.W.3d 602, 606 (Tex. 2002). If
the controlling facts are undisputed, the question whether the relationship which
exists is that of an employee or of an independent contractor is a question of law. 
Sherard v. Smith, 778 S.W.2d 546 (Tex. App.—Corpus Christi 1989, writ denied). 
          HCFCD presented the following undisputed evidence to show that Ramex was
an independent contractor on the Berry Bayou Project: (1) Ramex furnished the
equipment and supplies to perform the job, including the motor-driven vehicles at
issue; (2) HCFCD hired Ramex by the job, as a result of a bid process; and (3)
HCFCD paid Ramex by the job, according to its bid. HCFCD further provided
deposition testimony from Rosbell Ramos, a Ramex employee, that his company
decided the means and methods used to remove the double-box culverts, and that no
one from Harris County told him how to do it. We hold that HCFCD presented
competent summary judgment evidence to establish Ramex’s status as an independent
contractor. 
          In response, PG&E points out that Brenda Trevino, the HCFCD Berry Bayou
project manager, stated in deposition testimony that PG&E’s pipeline must be “field-located,” by HCFCD before construction commences. Ms. Trevino also testified that
HCFCD made the decision to install sheetpile walls to provide additional lateral
support to the pipeline. Trevino noted, however, that no one from HCFCD evaluated
“the sufficiency of Ramex’s work in connection with the removal of the original
section of box culvert.” When asked about what she relied on in determining whether
Ramex’s work was sufficient, she testified, “I’m relying on the fact that the
construction project is put in place as per the plans and on the expertise of the field
inspection crew and the experts that have been employed.” She further stated that the
field inspection crew consisted of HCFCD personnel that observed Ramex’s
activities. 
          In determining independent contractor status, the focus is on the right to
control the details of the work. Exxon Corp., 867 S.W.2d at 21 (emphasis added). 
Although PG&E presented evidence that HCFCD participated in the construction
plans and specifications, and made inspections as to the completion of the work
according to the plans, Trevino’s testimony does not create a fact issue that HCFCD
had a right to control, or did control, the details of Ramex’s work with respect to the
operation of a motor-driven vehicle, the only type of activity for which HCFCD
waives its immunity in tort. Thus, we hold that Trevino’s testimony does not create
a fact issue regarding HCFCD’s waiver of immunity under the TTCA. 
          In addition to Trevino’s testimony, PG&E relies on conditions in the
HCFCD/Ramex contract to establish that Ramex is not an independent contractor.
These provisions acknowledge that a county-designated engineer may furnish
specifications to, supervise, and ask Ramex to discharge, any Ramex employees who
do not “perform work in a proper and skillful manner.” PG&E contends that the
authority granted in these contract provisions establishes a fact issue as to whether
HCFCD retained control over Ramex. These contract provisions, however, indicate
control over the general requirements of the project, and its proper completion, but
do not show control over the details of Ramex’s work with regard to Ramex
employees use of motor-driven vehicles — the standard for determining whether a
party is an employee or independent contractor within the scope of section 101.021. 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.021; Exxon Corp., 867 S.W.2d at 21;
see also St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 542 & n. 91 (Tex. 2003); Hoechst
Celanese Corp. v. Compton, 899 S.W.2d 215, 220 (Tex. App.—Houston [14th Dist.]
1994, no writ) (finding off-duty officers hired by private corporation to be
independent contractors because, in part, they furnished their own equipment). In
particular, the fact that the engineer reserved the right to ask Ramex to remove an
objectionable worker does not mean that HCFCD controlled the details of Ramex’s
work. See Thomas v. Harris County, 30 S.W.3d 51, 54 (Tex. App.—Houston [1st
Dist.] 2000, no pet.) (holding physicians who treated inmates at county jail were not
county employees because county merely contracted with their employer for medical
services, and physicians were paid by employer rather than county). As the contract
acknowledges, Ramex is the ultimate decision-maker to hire and to fire — not the
county or its engineer. 
          PG&E further relies on a project manual HCFCD sent to Ramex and all other
bidders for the project. PG&E contends that this manual requires Ramex to remove
the double-box culverts that provided the lateral support to the soil surrounding the
pipeline. In the manual, section B of the Work Sequence states that “a major work
activity” includes removing an existing 2-12'x12'x600 concrete box. PG&E also
directs us to a manual provision dictating that HCFCD decide the controls Ramex is
to employ, including erosion and sediment controls. Project specifications, however,
do not show a right to control the details of the work. For example, the manual does
not direct HCFCD to use motor-driven equipment to remove the double-box culverts
supplying the lateral support. Moreover, PG&E has not presented any evidence to
show that the manual provisions and directions are in fact attributable to HCFCD. 
The manual on which PG&E relies indicates that TSC Engineering prepared it. 
PG&E neither disputes the manual’s author, nor does it allege that TSC Engineering
also served as HCFCD’s employee for purposes of the TTCA. Accordingly, PG&E
has not established a fact issue concerning HCFCD’s requisite right of control over
the details of Ramex’s work, based on the project manual’s provisions. 
          After reviewing the summary judgment evidence in a light most favorable to
PG&E, including the contract, the deposition testimony, and the manual, we agree
with the trial court that PG&E did not raise a genuine issue of fact as to whether
HCFCD exerted sufficient control over the details of Ramex’s work.


 If no dispute
exists as to the controlling facts and only one reasonable conclusion can be inferred,
the question of whether the relationship which exists is that of an employee or an
independent contractor is a question of law. Bright, 89 S.W.3d at 606; Sherard, 778
S.W.2d at 548. We therefore conclude that the trial court properly granted summary
judgment to HCFCD on PG&E’s negligence claim.
Strict Liability
          PG&E contends that the trial court erred in granting summary judgment on its
strict liability claims for removal of the pipeline’s lateral and subjacent support. 
HCFCD moved for summary judgment, contending that PG&E did not allege any
waiver of immunity from suit on this ground. PG&E responds that TTCA section
101.021(1) waives HCFCD’s sovereign immunity. See Tex. Civ. Prac. & Rem.
Code Ann. 101.021(1). Although some authority exists for strict liability claims for
removal of lateral and subjacent support,


 we disagree that section 101.021(1) waives
HCFCD’s immunity from suit for such claims. 
          HCFCD is immune from suit unless the Legislature has waived immunity in
plain and unambiguous terms. Kerrville State Hosp. v. Fernandez, 28 S.W.3d 1, 3
(Tex. 2000); Fed. Sign, 951 S.W.2d at 405. As PG&E’s strict liability claim does not
allege a wrongful act or omission distinct from its negligence claims, PG&E’s cause
of action does not fall within the exception to sovereign immunity under section
101.021(1). Moreover, it is not within our authority to establish such an exception
— such a function falls to the Legislature. See Kerrville State Hosp., 28 S.W.3d at
3; Tex. Gov’t Code Ann. § 311.034 (Vernon Supp. 2004) (“[A] statute shall not be
construed as a waiver of sovereign immunity unless the waiver is effected by clear
and unambiguous language.”). 
          PG&E has failed to present any authority, and we find none, allowing a party
to pursue a claim of strict liability for removal of lateral and subjacent support against
a governmental entity cloaked with sovereign immunity. At least one other court has
held that strict liability claims do not fall within the waiver provisions in section
101.021. See Univ. of N. Tex. v. Harvey, 124 S.W.3d 216 (Tex. App.—Fort Worth
2003, pet. filed). In Harvey, the Fort Worth Court of Appeals held that the
Legislature did not waive strict liability claims under TTCA section 101.021(2). 
Under these facts, we agree, and conclude that the trial court properly granted
HCFCD’s summary judgment on PG&E’s strict liability claim.
Breach of Contract
          The trial court granted HCFCD’s summary judgment and no-evidence summary
judgment on PG&E’s breach of contract claim. HCFCD moved for summary
judgment on the grounds that (1) it is immune from suit, and (2) PG&E is not a third
party beneficiary of the contract it claims HCFCD breached. PG&E responds that the
trial court has jurisdiction over contract claims against HCFCD based on section
49.066 of the Texas Water Code and section 262.001 of the Local Government Code. 
PG&E further contends that it is an intended third party beneficiary of the
HCFCD/Railroad contract. We first address whether PG&E pleaded a basis for
waiving HCFCD’s sovereign immunity.
          The Texas Water Code provides:
A district may sue and be sued in the courts of this state in the
name of the district by and through its board. A suit for contract
damages may be brought against a district only on a written
contract of the district approved by the district’s board. All courts
shall take judicial notice of the creation of the district and of its
boundaries.

Tex. Water Code Ann. § 49.006(a). 
          Courts have construed similar language in other statutes to waive immunity
from suit. See Missouri Pac. R. Co. v. Browns Navigation Dist., 453 S.W.2d 812,
813–14 (Tex. 1970); United Water Serv. v. City of Houston, No. 01-02-01057-CV,
2004 WL 909178 (Tex. App.—Houston [1st Dist.] Apr. 29, 2004, pet. filed); Loyd
v. ECO Res., Inc., 956 S.W.2d 110, 122 (Tex. App.—Houston [14th Dist.] 1997, no
pet.). We hold that the “sue and be sued” statutory language waives HCFCD’s
immunity from suit by legislative consent.


 Accordingly, we address whether PG&E
raises a fact issue as to its status as a third party beneficiary.
          To claim third party beneficiary status, PG&E relies on language in the
HCFCD/Railroad contract that obligates HCFCD not to interfere with the activities
of the Railroad’s licensees, in particular:
It is expressly agreed and understood that this license is made and
given on condition that [HCFCD’s] use of the property under this
license shall not interfere with the [Railroad’s] and its
successors’, licensees’, invitees’ and assigns’ operations over, or
upon said property, nor with maintenance of or repairs to its
tracks or any of its facilities upon said property.

          PG&E argues that this section confers enforceable third party rights upon a
limited class of persons, including the Railroad’s other licensees. PG&E contends
that the contract affords it rights as the successor of a Railroad licensee, namely, the
Lo-Vaca Gathering Company, to which the Railroad granted a pipeline license in
1964. 
          PG&E further relies on the HCFCD/Railroad contract’s non-waiver clause:
It is expressly covenanted and agreed that no waiver by Licensor,
its successors or assigns, of any condition herein set forth shall
extend to or affect or be deemed to waive any other breach
(whether prior or subsequent) of such condition herein set forth.

          PG&E contends that these clauses together demonstrate an intent to confer
legally enforceable benefits upon the Railroad’s licensees, particularly because the
contract does not disclaim any third party beneficiary rights. HCFCD responds that
the Railroad contract obligates HCFCD to the Railroad for conduct that interferes
with the Railroad’s other licensees, but it does not elevate PG&E to an intended
beneficiary, with authorization to sue HCFCD directly for a breach.
          Unambiguous contracts — as the parties agree this one to be — are construed
as a matter of law. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). We read and
consider the entire contract to determine the true intent of the parties. Dedier v.
Grossman, 454 S.W.2d 231, 234 (Tex. Civ. App.—Dallas 1970, writ ref’d n.r.e.); see
also Cook Composites, Inc. v. Westlake Styrene Corp., 15 S.W.3d 124, 132 (Tex.
App.—Houston [14th Dist.] 2000, pet. dism’d). A court should employ the plain and
generally accepted meaning of the contract terms, unless the instrument defines them
in a technical or different sense. Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118,
121 (Tex. 1996).
          In determining whether a third party has a right to enforce a contract, courts
look to the express intent of the contracting parties. MCI Telecomms. Corp v. Tex.
Utils. Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999); Whitten v. Vehicle Removal Corp.,
56 S.W.3d 293, 311 (Tex. App.—Dallas 2001, pet. denied). A court should not imply
or create third party beneficiary rights unless they are expressly intended by the
contracting parties, and plainly and fully spelled out in the four corners of the
contract. MCI Telecomms., 995 S.W.2d at 651; Whitten, 56 S.W.3d at 311. Thus,
courts should presume that an agreement confers no third party enforcement rights
unless it “clearly appears” that the contract intends a third party to benefit, to the
point of suing upon the contract. MCI Telecomms., 995 S.W.2d at 651; Whitten, 56
S.W.3d at 311. Accordingly, a court will not interpret a contract to confer third party
beneficiary rights unless: (1) the contract plainly expresses the third party obligation
of the bargain-giver, (2) it is unmistakable that a benefit to the third party is within
the contemplation of the primary contracting parties, and (3) the primary parties
contemplate that the third party would be vested with the right to sue for enforcement
of the contract. Whitten, 56 S.W.3d at 311. The fact that a third party receives
incidental benefits from a contract does not establish a right of action to enforce the
contract. MCI Telecomms., 995 S.W.2d at 650; Young Ref. Corp. v. Pennzoil Co., 46
S.W.3d 380, 387 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). 
          In MCI, Texas Utilities (TU) sought to recover attorney’s fees for a breach of
a contract between MCI and the Missouri Pacific Railroad (MoPac). TU claimed it
was a third party beneficiary of the MCI/MoPac contract as a licensee, and that MCI
had damaged TU’s poles in laying fiber optic cable along the easement. The
MCI/MoPac contract explicitly provided, however, that “neither this Agreement, nor
any term or provision hereof, nor any inclusion by reference, shall be construed as
being for the benefit of any party not in signatory hereto.” Id. at 649–50. The Texas
Supreme Court held that the contract’s disclaimer provision reflected that the parties
had no intent to confer third party benefits under the contract. Id. at 652. The Court
further observed that nothing in the contract indicated that MCI and MoPac ever
intended to confer a direct benefit to TU. Id. at 652. 
          Although the non-interference language TU relied upon in the MCI case
corresponds to the contract in this case, PG&E distinguishes MCI from the present
facts on the basis that the HCFCD/Railroad contract does not contain a provision
expressly disclaiming any third party rights. PG&E ignores, however, the affirmative
requirement that HCFCD and the Railroad expressly contract directly for PG&E’s
benefit. See id. at 651–52. An express disclaimer is not necessary to deny third party
rights; instead, an express obligation is necessary to confer them. See Union Pac.
R.R. Co. v. Novus Int’l, Inc., 113 S.W.3d 418, 422–23 (Tex. App.—Houston [1st
Dist.] 2003, pet. denied) (concluding that the contract did not clearly spell out an
intent on behalf of the contracting parties to confer a direct benefit to a non-contracting party). We conclude that the HCFCD/Railroad contract does not
evidence an intent to directly benefit PG&E or its predecessor. Thus, PG&E is not
a third party beneficiary of the contract as a matter of law. See MCI Telecomms., 995
S.W.2d at 652; Union Pac., 113 S.W.3d at 422–23 (“Nowhere in the rail contract is
it stated that the parties are contracting for the benefit of Carbide’s customers.”)
(emphasis in original); Young Ref., 46 S.W.3d at 387–88 (“[N]et profits agreement
contains no indication of an intent to benefit Young Refining. Young Refining is not
mentioned in the agreement, and all of the obligations flow between [the parties to
the agreement]. Young Refining would have benefitted, but only incidentally, by the
contract.”). Accordingly, the trial court properly granted summary judgment on
PG&E’s contract claim.
          In connection with its contract claim, PG&E contends that the trial court erred
in granting summary judgment on its declaratory judgment claim. In its second
amended petition, PG&E sought to have the trial court declare the parties’ rights as
to the HCFCD/Railroad agreement and PG&E’s third party beneficiary status. As we
have concluded that PG&E has no right to sue as an intended third party beneficiary
on the HCFCD/Railroad contract, the trial court properly granted summary judgment
on PG&E’s declaratory judgment claim.
Inverse Condemnation
          PG&E contends that the trial court erred in granting summary judgment on its
inverse condemnation claim. 
          The Texas Constitution provides that, “No person’s property shall be taken,
damaged or destroyed for or applied to public use without adequate compensation
being made, unless by the consent of such person . . . .” Tex. Const. art. I, § 17. 
Inverse condemnation occurs when property is taken, damaged, or destroyed for
public use without process or without proper condemnation proceedings, and the
property owner attempts to recover compensation. City of Abilene v. Burk Royalty
Co., 470 S.W.2d 643, 646 (Tex. 1971); Allen v. City of Texas City, 775 S.W.2d 863,
864 (Tex. App.—Houston [1st Dist.] 1989, writ denied). Under section 17, a
landowner may recover for damages to his property even though there is no transfer
of property rights. Tex. Const. art. I, § 17; State v. Biggar, 848 S.W.2d 291, 297–98
(Tex. App.—Austin 1993), aff’d, 873 S.W.2d 11 (Tex. 1994); Steele v. City of
Houston, 603 S.W.2d 786, 790 (Tex. 1980).
          Jurisdiction over such claims is exclusively vested with the Harris County
Courts at Law, pursuant to section 25.1032(c) of the Texas Government Code. See
Tex. Gov’t Code Ann. § 25.1032(c) (Vernon 2004) (“A county civil court at law has
exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory
and inverse, regardless of the amount in controversy.”). 
          In Taub v. Aquila Southwest Pipeline Corp., 93 S.W.3d 451 (Tex.
App.—Houston [14th Dist.] 2002, no pet.), our sister court held that, based on this
section and its history, the Harris County Civil Courts at Law have exclusive
jurisdiction over a party’s claims for inverse condemnation seeking condemnation
damages. Based upon the plain language contained in § 25.1032(c), we agree with
HCFCD and our sister court. The trial court did not have subject matter jurisdiction
over PG&E’s inverse condemnation claims. Accordingly, we reverse the trial court’s
judgment on PG&E’s inverse condemnation claim, as it should have been dismissed
without prejudice. See Tex. Civ. Prac. & Rem. Code Ann. § 16.064(a)(1) (Vernon
2004); City of Houston v. Boyle, Nos. 01-03-00016-CV, 01-03-00759-CV, 2004 WL
1516428 (Tex. App.—Houston [1st Dist.] July 8, 2004, no pet. h.).
          HCFCD further contends that we should dismiss PG&E’s other claims because
they are inherently intertwined with the inverse condemnation claim, relying on Taub. 
In Taub, however, the court of appeals observed that “the Harris County Civil Courts
at Law have jurisdiction, but not exclusive jurisdiction, over a landowner’s claims,
regardless of the amount in controversy . . . .” Taub, 93 S.W.3d at 458 (emphasis
added). We conclude that PG&E’s remaining claims were properly brought in the
district court — save the fact that HCFCD is immune from two of them. 
Accordingly, we hold that the trial court had jurisdiction to grant summary judgment
on PG&E’s other claims.
 
 
 
 
 
 
 
 
 
Conclusion
          We affirm the judgment of the trial court as to PG&E’s negligence, strict
liability, breach of contract, and declaratory judgment claims. We reverse the
judgment insofar as it disposes of the claim for inverse condemnation, and render that
PG&E’s claim for inverse condemnation be dismissed without prejudice. We deny
all other outstanding motions.
 
                                                             Jane Bland
                                                             Justice
 
Panel consists of Justices Alcala, Higley, and Bland.