**Affirmed and Opinion filed January 30, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00367-CV

### CHRISTINE KOLIUS, Appellant

### V.

### CENTER POINT ENERGY HOUSTON ELECTRIC LLC, Appellee

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2010-28651A**

## O P I N I O N

A homeowner sued an electric utility, seeking to recover damages caused by the utility's purported gross negligence in allegedly restoring the electrical current to the home after it was flooded by storm surge. We conclude that the summary-judgment evidence does not raise a genuine fact issue as to whether the utility is liable for damages resulting from that action. Accordingly, we affirm the trial court's summary judgment.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Christine Kolius owns real property located at 119 Shoreacres Boulevard in La Porte, Texas ("Property"). On September 13, 2008, the storm surge caused by Hurricane Ike flooded the area, including the house on Kolius's property ("House"). Appellee/defendant CenterPoint Energy Houston Electric, LLC is a utility that delivers electricity to the House. On September 25, 2008 (the "Incident Date"), the electricity at the House had not yet been restored and the renters who had been occupying the House had not returned. The House was vacant. According to a neighbor, on that date, two men from Asplundh Construction Corporation stopped at the neighbor's home and asked her if she would like to have her electric service restored. The neighbor replied that she would like it very much and one of the Asplundh workers allegedly said, "we will have the power on in the next 15 minutes unless you hear a loud explosion," and laughed. According to the neighbor, approximately ten minutes later, she heard a loud explosion and saw smoke rising from the House. The neighbor ran to the House and saw a fire where "the electrical service entered the [House]." The neighbor stated that emergency vehicles arrived but the House was "fairly consumed with fire by the time the firefighters were able to connect their hoses and direct water to the [House]."

Kolius sued both CenterPoint and Asplundh. She asserted a claim for gross negligence, alleging that CenterPoint and Asplundh were grossly negligent when they allegedly restored electrical current "to a residence that was visibly submerged by flood water."[1] Kolius alleged that CenterPoint and Asplundh knew

---

[1] Kolius has referred to this act as "restoring power," "restoring electrical current," "introducing electrical current," "reintroducing electricity," "reintroducing electrical current," "reintroducing power," "repowering the circuit connected to [the House]," "reenergizing," and "reconnecting the power." For convenience and clarity, we refer to this act as "restoring electrical current."

the home had been submerged in salt water and that it was unsafe to restore electrical current when they did so. Kolius asserted that CenterPoint is jointly liable with Asplundh for all the actions made the basis of her suit and that the gross negligence of both caused a fire that completely destroyed the House. She sought to recover actual damages as well as exemplary damages.[2]

CenterPoint filed a traditional and no-evidence motion for summary judgment. In the no-evidence part of this motion, CenterPoint asserted that there is no evidence that (1) CenterPoint engaged in conduct that was grossly negligent, (2) CenterPoint and Asplundh were engaged in a joint enterprise, or (3) CenterPoint is liable for Asplundh's conduct. Asplundh also filed a summary-judgment motion.

The trial court denied Asplundh's summary-judgment motion and granted CenterPoint's summary-judgment motion. The trial court then severed Kolius's claim against CenterPoint, thus making final the summary judgment in favor of CenterPoint. Kolius now challenges that summary judgment.

## II. STANDARD OF REVIEW

In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary-judgment

---

[2] Kolius asserted only a claim for gross negligence. She did not assert a negligence claim.

evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

### III. ISSUES PRESENTED

Kolius asserts the following issues for appellate review:

(1)     Whether CenterPoint is protected from liability by its tariff.

(2)     Whether CenterPoint owed Kolius a non-delegable duty not to restore electrical current to the House in light of the potential for property damage.

(3)     Whether a scintilla of evidence existed as to whether CenterPoint was negligent or grossly negligent.

(4)     Whether a scintilla of evidence existed as to a joint enterprise between CenterPoint and Asplundh.

(5)     Whether work on toppled electrical lines in a disaster zone can be an inherently dangerous activity.

### IV. ANALYSIS

Gross negligence consists of both objective and subjective elements. *U-Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). Gross negligence means an act or omission (1) which, when viewed objectively from the defendant's standpoint at the time of its occurrence, involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) of which the defendant has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. *See U-Haul Intern., Inc.*, S.W.3d at 137; Tex. Civ. Prac. & Rem. Code §41.001(11) (West 2014). The only alleged act or omission that Kolius asserts

constitutes gross negligence is CenterPoint's alleged act of restoring electrical current to the House. For the purposes of our analysis, we presume, without deciding, that electrical current was restored to the House on the Incident Date, and that this act was gross negligence. We focus on whether there is a genuine fact issue as to whether CenterPoint is liable for this act.

**A.** **Is there a genuine fact issue as to whether CenterPoint had the right to direct and control the details of the work of the individuals who restored electrical current to the House?**

When Hurricane Ike was approaching the Texas coast, Kolius and the individuals who were renting the House evacuated the area. On the Incident Date, neither Kolius nor the renters were on the Property. But, in her affidavit, neighbor Karen Harris, who lived near the Property, raised a genuine fact issue as to whether two men in an Asplundh truck ("Asplundh Personnel") restored the electrical current to the House on this date. Kolius does not assert that these two men were general or regular employees of CenterPoint.[3] Nonetheless, Kolius asserts that CenterPoint is liable for the conduct of the Asplundh Personnel on the date in question because CenterPoint supervised them.

A general or regular employee of one employer may become the borrowed employee of another if the other employer has the right to direct and control the details of the employee's particular work. *See Golden Agri-Resources Ltd. v. Fulcrum Energy, LLC*, No. 01-11-00922-CV, 2012 WL 3776974, at *11 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, pet. denied) (mem. op.); *Gibson v. Grocers Supply Co.*, 866 S.W.2d 757, 760 (Tex. App.—Houston [14th Dist.] 1993, no writ). Thus, we consider the summary-judgment evidence as it relates to a right by CenterPoint to direct and control the details of the Asplundh Personnel's particular work on the Incident Date.

---

[3] Nor does other summary-judgment evidence raise a genuine fact issue as to whether these two workers were general or regular employees of CenterPoint.

In response to CenterPoint's no-evidence motion for summary judgment, Kolius submitted the following evidence: (1) excerpts from her deposition, (2) various photographs, (3) an incident report from the "Harris County Fire Marshal Office," (4) a page printed from a CenterPoint Energy internet website, (5) the affidavit of neighbor Karen Harris, (6) the affidavit of CenterPoint contractor Cliff Whitehead, and (7) a report from Kolius's expert, Roger Owens. The first four items do not contain any information that arguably relates to whether CenterPoint had the right to direct and control the details of the Asplundh Personnel's particular work on the Incident Date. As explained below, though the remaining items of proof contain information that arguably touch on the subject, they do not raise a genuine fact issue on this point.

### *The Harris Affidavit*

In her affidavit, Harris testified that on the Incident Date she saw the Asplundh Personnel and at least four CenterPoint personnel at the scene of the fire. The presence of the CenterPoint personnel at the fire along with the Asplundh Personnel does not speak to the relationship between the two. Reasonable and fair-minded jurors could not find that CenterPoint had the right to direct and control the details of the Asplundh Personnel's work based only on the presence of these CenterPoint personnel at the fire. *See EPGT Texas Pipeline, L.P. v. Harris County Flood Control District*, 176 S.W.3d 330, 335–38 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd). Under the familiar summary-judgment standard of review, Harris's affidavit testimony does not raise a genuine fact issue as to whether CenterPoint had the right to direct and control the details of the Asplundh Personnel's particular work on the Incident Date. *See EPGT Texas Pipeline, L.P.*, 176 S.W.3d at 335–38.

## *The Whitehead Affidavit*

In his affidavit, Cliff Whitehead, a CenterPoint contractor, testified as follows:

- Whitehead worked for CenterPoint from 1971 through 1995.

- At the time of the incident at issue in this case, Whitehead had been hired by CenterPoint as a contractor to assist with power restoration after Hurricane Ike disrupted electrical service to thousands of homes along the Gulf Coast.

- CenterPoint contracted with Asplundh to help with the Hurricane Ike restoration efforts.

- During the restoration, Whitehead assisted CenterPoint head lineman Paul Mitchell with the supervision of Asplundh crews working in the area in which the House is located.

- On the Incident Date, "an Asplundh crew under the supervision of Matt Webster" restored power to the circuit servicing the Property.

The summary-judgment evidence does not contain any testimony from any employee of Asplundh or CenterPoint, nor are there any contracts or documents that might relate to whether CenterPoint had the right to direct and control the details of the Asplundh Personnel's particular work on the Incident Date. Whitehead's statement that CenterPoint head lineman Paul Mitchell was supervising Asplundh crews working in this area "during the restoration" is conclusory; Whitehead does not provide underlying facts that would support a finding that CenterPoint had the right to direct and control the details of the Asplundh Personnel's particular work on the Incident Date. *See Golden Agri-Resources Ltd.*, 2012 WL 3776974, at *10–11 (holding statements in affidavit that an employee was seconded to another company, that the employer did not direct the work or have control over the seconded employees, and that other companies controlled the seconded employees were conclusory statements).

In addition, neither the Whitehead affidavit nor any other summary-judgment evidence explains anything about who Matt Webster is or for whom he worked on the Incident Date. Under the summary-judgment standard of review, this testimony does not raise a genuine fact issue as to whether CenterPoint had the right to direct and control the details of the Asplundh Personnel's particular work on the Incident Date. *See EPGT Texas Pipeline, L.P.*, 176 S.W.3d at 335–38 (holding that summary-judgment evidence did not raise genuine fact issue as to whether defendant had right to control the details of the work performed by contractor's employees).

### *The Owens Report*

In a two-page letter that serves as an expert report, Kolius's expert Roger Owens makes the following statements:

- "[E]lectrical service was restored by CenterPoint."
- "Clearly, Center Point was negligent in restoring service to an unoccupied residence where the electrical service drop had been flooded during Hurricane Ike's storm surge."
- "Since the surge occurred on the 13th and the fire occurred coincidentally with Center Point energizing the system, the fire was caused solely by the negligence of the Center Point linemen."
- "In summary, it is the opinion of Owens Forensic Engineering that the fire occurred as a direct result of Center Point Linemen failing to follow safe procedures for re-energizing the residence service drop."

These conclusory statements that CenterPoint or its linemen restored electrical current to the House on the Incident Date would not allow reasonable and fair-minded jurors to differ in their conclusions as to whether CenterPoint had the right to direct and control the details of the Asplundh Personnel's particular work on the Incident Date. *See Coastal Transport Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (stating that conclusory expert testimony does not

raise a fact issue); *Golden Agri-Resources Ltd.*, 2012 WL 3776974, at \*10–11; *EPGT Texas Pipeline, L.P.*, 176 S.W.3d at 335–38.

Considering the proof under the familiar summary-judgment standard of review, we conclude the summary-judgment evidence does not raise a genuine fact issue as to whether CenterPoint had the right to direct and control the details of the Asplundh Personnel's particular work on the Incident Date, when they allegedly restored electrical current to the House. *See Coastal Transport Co.*, 136 S.W.3d at 232; *Golden Agri-Resources Ltd.*, 2012 WL 3776974, at \*10–11; *EPGT Texas Pipeline, L.P.*, 176 S.W.3d at 335–38.

**B.    Is there a genuine fact issue as to whether the work performed by the Asplundh Personnel was an inherently dangerous activity?**

In an alternative argument under her second and fifth issues, Kolius asserts that the work performed by the Asplundh Personnel was inherently dangerous, and, therefore, CenterPoint is liable for the Asplundh Personnel's conduct, even if they are independent contractors. Business owners and employers generally are held liable for an independent contractor's tortious acts if the independent contractor's work is inherently dangerous and thus involves a nondelegable duty.[4] *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 795 (Tex. 2005). A nondelegable duty is imposed by law on the basis of concerns for public safety, and the party bearing such a duty cannot escape it by delegating it to an independent contractor. *See id*. The Supreme Court of Texas has recognized a policy in favor of allowing liability for the independent contractor's work when the work is inherently dangerous. *See id*. An activity is inherently dangerous based on the nature of the activity itself rather than the manner of performance, so the responsibility for creating the danger

---

[4] A statute also may prescribe a nondelegable duty. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 795 (Tex. 2005). But, Kolius does not assert that any statute prescribes a nondelegable duty.

cannot be shifted completely to the contractor performing the work. *See id.* Though Texas courts recognize a number of nondelegable duties owed to one's own employees, Texas courts have recognized very few such duties with respect to nonemployees. *See Central Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 652 (Tex. 2007). In fact, Texas courts have found very few activities so inherently dangerous as to impose a nondelegable duty. *See id.*

Kolius asserts that "working with toppled power lines in a disaster zone that was recently underwater is an inherently dangerous activity." Kolius also states that "[w]orking with recently submerged power lines still connected to storm-surge-destroyed-homes is an inherently dangerous activity." Kolius further maintains that "working on electrical power lines is an inherently dangerous activity." The parties have not cited and research has not revealed any Texas case in which a court has held that the type of work described in any of the three foregoing formulations is inherently dangerous, nor does research reveal any case in which a Texas court has affirmed a finding to this effect.[5] In addition, the cases that the parties cite regarding the dangers of electrical power lines address the dangers of electrocution in the context of claims asserted by or on behalf of people who suffered personal injuries as a result of electrocution. In today's case, the danger at issue is the danger of damage from a fire caused by the allegedly

---

[5] Some Texas courts have stated that a person who maintains electrical power lines owes a duty of ordinary care to avoid harm to others from these lines and that this negligence duty may include a duty to warn employees of independent contractors working close to these lines of the danger. *See Tex. Elec. Serv. Co. v. Holt*, 249 S.W.2d 662, 667 (Tex. Civ. App.—Fort Worth 1952, writ ref'd n.r.e.); *West Texas Utilities Co. v. Renner*, 53 S.W.2d 451, 453–54 (Tex. Comm'n App. 1932, holding approved). These courts, however, do not hold that working on electrical power lines or working with damaged power lines is an inherently dangerous activity. *See Holt*, 249 S.W.2d at 667; *Renner*, 53 S.W.2d at 453–54.

wrongful act of restoring electrical current to a house after damage from a hurricane. The parties have not cited and research has not revealed any cases addressing whether making such decisions regarding the restoration of electrical current is an inherently dangerous activity.

Kolius argues that whether an activity is inherently dangerous is a question of fact. The Supreme Court of Texas's opinion in *Central Ready Mix Concrete* contains language suggesting that courts, not factfinders, make this determination. This language also suggests that the high court would be unlikely to conclude that the work performed by the Asplundh Personnel was an inherently dangerous activity. *See Central Ready Mix Concrete Co.*, 228 S.W.3d at 652–53 & n.12. Still, we presume, without deciding, that there is no legal impediment that would prevent a jury from determining this issue.

Nonetheless, CenterPoint asserted in its motion for summary judgment that there is no evidence that (1) CenterPoint engaged in conduct that was grossly negligent, (2) CenterPoint and Asplundh were engaged in a joint enterprise, or (3) CenterPoint is liable for Asplundh's conduct. In her response, Kolius asserted that CenterPoint is liable for the conduct of the Asplundh Personnel because the work they were performing was an inherently dangerous activity. Because Kolius raised this doctrine in an attempt to raise a genuine fact issue precluding a no-evidence summary judgment, the burden was on Kolius to point out summary-judgment evidence raising a genuine fact issue as to whether the work the Asplundh Personnel were performing was an inherently dangerous activity.[6] *See Brewer &*

---

[6] Kolius asserts in part that she did not have to raise a fact issue in this regard because CenterPoint did not assert in its motion that there was no evidence of an inherently dangerous activity. But, Kolius attempts to use the inherently-dangerous-activity doctrine to raise a fact issue as to whether CenterPoint is liable for Asplundh's conduct and committed gross negligence, issues that were raised by CenterPoint's no-evidence summary-judgment grounds. In this context, CenterPoint's failure to specifically assert in its motion that there is no evidence

11

*Pritchard, P.C.*, 73 S.W.3d at 206–08. *See also Fifth Club, Inc.*, 196 S.W.3d at 796 ("whether an employer can be liable for . . . work performed by an independent contractor is determined by the *facts of the case* analyzed under the . . . nondelegable duty exception, which includes inherently dangerous activities" (emphasis added)).

The summary-judgment evidence contains the Owens Report, but in it Owens does not address whether the work the Asplundh Personnel were performing was an inherently dangerous activity. The summary-judgment evidence also contains a page allegedly printed from CenterPoint's website regarding hurricane preparedness. This page contains the following statements: (1) "If water has risen above the electrical outlets, contact a licensed electrician before turning on the main circuit breaker."; (2) "Any submerged appliances or equipment will need to dry for at least one week and be checked by a qualified repair person prior to being turned on."; and (3) "Check the weatherhead, which connects the overhead power line to your home or business. Any weatherhead problems will need to be repaired by an electrician prior to service being restored." This evidence does not address whether the work the Asplundh Personnel were performing is an inherently dangerous activity.

After carefully reviewing all of the summary-judgment evidence under the applicable standard of review, we conclude that this evidence does not raise a genuine fact issue as to whether the work the Asplundh Personnel were performing was an inherently dangerous activity. *See Hanna v. Vastar Resources, Inc.*, 84

---

of an inherently dangerous activity does not relieve Kolius of the burden of submitting summary-judgment evidence raising a genuine fact issue as to this doctrine if, as asserted by Kolius, this issue is a question of fact. *See Chea v. Poon*, No. 14-08-01134-CV, 2010 WL 4684711, at *6, n.3 (Tex. App.—Houston [14th Dist.] Nov. 18, 2010, pet. denied) (mem. op.); *Chrismon v. Brown*, 246 S.W.3d 102, 113 n.12 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

S.W.3d 372, 377–78 (Tex. App.—Beaumont 2002, no pet.) (affirming summary judgment and holding that inherently-dangerous-work doctrine did not apply, noting that there was no evidence that the work in question was inherently dangerous).

Kolius asserts that it is "plainly evident to [her]" that the work in question is an inherently dangerous activity. But, even if this proposition is evident to Kolius, she still has the burden of raising a genuine fact issue in this regard. *See Brewer & Pritchard, P.C.*, 73 S.W.3d at 206–08. Kolius also relies on *Kraus v. Alamo National Bank of San Antonio*. *See* 586 S.W.2d 202, 205 (Tex. App.—Waco, 1979), *aff'd on other grounds*, 616 S.W.2d 908 (Tex. 1981). But, the *Kraus* court held that the trial court did not err in failing to conclude that the activity in question was inherently dangerous as a matter of law. *See id.* Even if *Kraus* is correctly decided on this point, this precedent does not relieve Kolius of her burden of raising a fact issue as to whether the work the Asplundh Personnel were performing was an inherently dangerous activity. *See id.*

Kolius also asserts that two sister courts of appeals have determined that working with electricity or power lines is an inherently dangerous. Neither case Kolius cites for support is on point.

First, Kolius relies on *Shell Oil Company v. Songer*. *See* 710 S.W.2d 615, 620–21 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). But, the *Songer* court did not hold that the work in question gave rise to a nondelegable duty under the inherently-dangerous-activity doctrine. *See id.* Rather, the *Songer* court held that, though there is an inherent danger in working around live wires, the duty to perform the electrical repair work safely was on the independent contractor in control of that work, whose employee sustained injuries while performing repairs, rather than on the owner or occupier of the premises. *See id.*

13

Kolius also cites *Nance Exploration Company v. Texas Employers' Insurance Association*. *See* 305 S.W.2d 621, 627 (Tex. Civ. App.—El Paso 1957, writ ref'd n.r.e.). But, the *Nance Exploration* court held that the work in question, which was performed near electrical power lines, was not inherently dangerous. *See id*. Though, in an obiter dictum, the *Nance Exploration* court did state that "working with electricity, or highlines, is intrinsically dangerous," such work was not involved in *Nance Exploration*, and the court cited no authority for this proposition. *See id*.

For the foregoing reasons, we conclude that Kolius's arguments in support of her second and fifth issues are incorrect, and we overrule these issues.

## C. Is there a genuine fact issue as to whether a joint enterprise existed between CenterPoint and Asplundh?

In an alternative argument under her fourth issue, Kolius asserts that the summary-judgment evidence raises a genuine fact issue as to whether a joint enterprise existed between CenterPoint and Asplundh on the Incident Date, and therefore as to whether CenterPoint is liable for the Asplundh Personnel's conduct. Joint-enterprise liability makes each party thereto the agent of the other and thereby responsible for the negligent act of the other.[7] *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000). The essential elements of a joint enterprise are: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *See id*.

---

[7] We presume, without deciding, that CenterPoint would be liable for any gross negligence of the Asplundh Personnel if CenterPoint and Asplundh were both parties to a joint enterprise.

14

Kolius argues that the record contains evidence of a joint enterprise because there is summary-judgment proof that (1) both CenterPoint and Asplundh had heavy equipment in the Shoreacres area, where the incident occurred; (2) CenterPoint was working with Asplundh in the area to restore electrical current; (3) Asplundh was supervised by CounterPoint; (4) Harris saw both CenterPoint and Asplundh workers at the scene of the fire; (5) Harris stated that CenterPoint and Asplundh were coordinating efforts to restore electrical current to houses; and (6) CenterPoint contracted with Asplundh to help with the Hurricane Ike restoration efforts. Presuming all of this is so, and presuming for the sake of argument that the summary-judgment evidence raises a genuine fact issue as to the first three elements of joint enterprise, under the familiar summary-judgment standard of review, the summary-judgment evidence does not raise a genuine fact issue as to whether CenterPoint and Asplundh had an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *See Triplex Communications*, *Inc. v. Riley*, 900 S.W.2d 716, 718–19 (Tex. 1995); *Burchinal v. PJ Trailers-Seminole Management Co.*, 372 S.W.3d 200, 215–16 (Tex. App.—Texarkana 2012, no pet.). Accordingly, we overrule Kolius's fourth issue.

## V. CONCLUSION

Having rejected all of Kolius's appellate challenges to the trial court's no-evidence summary judgment, we conclude that the trial court did not err in granting summary judgment based on CenterPoint's no-evidence grounds. Accordingly, we overrule Kolius's challenges to the summary judgment in her four appellate issues regarding these grounds, including her assertion in the third issue that a scintilla of evidence existed as to whether CenterPoint was negligent or

grossly negligent.[8]

The trial court's judgment is affirmed.

/s/     Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Kem Thompson Frost, Justice Jeffrey Brown, and Justice J. Brett Busby. (Justice Jeffrey Brown not participating).[9]

---

[8] In its summary-judgment motion, CenterPoint sought a traditional summary judgment based on its tariff. Kolius challenges this ground in her first issue. Because we affirm based upon the no-evidence grounds, we need not and do not address the first issue or CenterPoint's tariff.

[9] After oral argument but before the court issued this opinion, Justice Jeffrey Brown was appointed to the Supreme Court of Texas and is no longer a justice on the Fourteenth Court of Appeals. The remaining two justices have decided the case. *See* Tex. R. App. P. 41.1(b).