## TEXAS ELECTRIC SERVICE CO. v. HOLT et al.

### No. 15321.

Court of Civil Appeals of Texas. Fort Worth.

May 9, 1952.

Rehearing Denied June 13, 1952.

Cantey, Hanger, Johnson, Scarborough & Gooch, Howard Barker, W. B. Thompson, and Charles L. Stephens, Fort Worth, for appellant.

Mays & Mays and Dave Miller, Fort Worth, Leachman, Matthews & Gardere and Henry D. Akin, Dallas, for appellees.

EARL P. HALL, Chief Justice.

This appeal involves exceptions to the general rule that an employer is not liable for injuries sustained by an employee of an independent contractor.

Appellee Lillian Holt, individually and as guardian for her minor children, sued appellant Texas Electric Service Company in a district court of Tarrant County, claiming damages for fatal injuries sustained by her husband, Drexel Morgan Holt, Jr., on April 29, 1949. It was further alleged the deceased was working as a lineman in the employ of Aaby Construction Company, independent contractor, who was performing work for appellant.

The compensation carrier for Aaby Construction Company, American Mutual Liability Insurance Company intervened, seeking recoupment for payments made as a result of the death of Drexel Morgan Holt, Jr.

Trial was to a jury and as a result of their answers to certain special issues submitted the trial court rendered judgment against appellant and in favor of appellees, Mrs. Lillian Holt and her children, in a total sum of $66,000, out of which a judgment was rendered in favor of American Mutual Insurance Company as recoupment for its payments.

Appellant's appeal consists of twenty-eight points, some of which refer to error of the trial court in overruling its motion for instructed verdict based upon insufficiency of the evidence to establish a cause of action against it.

Appellant's main contentions are that, under the law, an owner having work performed on his premises by an independent contractor is not ordinarily liable for injuries sustained by an employee of such contractor by the contractor's own negligence or the negligence of a fellow employee, where the evidence fails to connect the owner with the negligence that caused the injury; employment of this particular independent contractor was for performance of work that was not dangerous to such independent contractor's employees; at time of injury said employee of the independent contractor was not an invitee of appellant; and that the burden of bringing appellant within an exception to the general rule exempting an owner or employer from liability for injury received by the contractor's employees rests upon appellees, the plaintiffs.

■ We note in 23 Tex.Jur., p. 563, sec. 17, under title of Independent Contractors, the following: "As to the contractor's servants who may suffer injury, the employer or owner is not ordinarily liable unless the work was inherently dangerous or unless he has failed to provide a safe place to work and safe appliances. Where it clearly appears that the fault was that of the contractor alone, a recovery against the employer is not permitted. * * * *"

■ In discussing this point we will keep in mind only the testimony which is most favorable to the verdict. The undisputed evidence is that Aaby Construction Company was employed by appellant to install crossarms upon appellant's poles and string one additional wire thereon for a distance of several miles. This new line or wire was to be strung and fuses or cutouts installed while said wire was free from electricity. The poles in question were already supporting a line carrying about 7,000 volts. Appellant's employees were to remove this line from atop of said poles and place it on the other side of the new eight foot crossarms while said line was energized. They performed this work by using rubber gloves and other safety devices.

On April 28, 1949, appellant's superintendent supervising the job discussed with the independent contractor, Mr. S. H. Aaby, the possibility of appellant's energizing a small portion of the new line in order to re-stretch the old wire in the same area, to which plaintiff's witness, Mr. Aaby, testified:

"Q. Where did you get your information? (that the wire at the time and place in question was hot.) A. From the Texas Electric Service Company.

"Q. In what way, now? A. On the day of the 28th, our work in this particular section was completed. The Texas Electric Service Company had some work that they wanted to perform out there which would necessitate them making this new wire hot. The superintendent of construction discussed it with me and I told him we were all through working in that section—'

*      *      *      *      *      *

"A. I told him that as far as we're concerned, we were through with our work in that particular section and it wouldn't bother us. I also talked, that same day, to one of the foremen of the Texas Electric Service Company, and he told me that he had been informed by his superintendent that it would be all right to energize this new line, and he said, 'I will energize it in the morning.'

*      *      *      *      *      *

"A. * * * I discussed it with him and told him it would be all right. On the morning of the 29th, before our men left the base, at the foreman's meeting in my office, we discussed the fact that that section of the line would be hot. Later that morning, when I went out on the job, I stopped and talked with the foreman of the Texas Electric and he, again, informed me that that line was hot.

"Q. Then, what did you do with respect to your crew, if anything? A.

My foreman, Mr. Benson had also stopped, before I had and he informed him that that line was hot. We then went on up to the boat works and completed our work which we had to do up there and at 1:25 that day, our work was completed * * * with the exception of installing three new cartridges. * * *

* * * * * *

"A. The protective devices were available on the truck. (To connect and install those cartridges or fuses while the wire was hot.)

* * * * * *

"Q. Was that what you call an independent contract job? A. Yes, sir.

"Q. They (meaning appellant) had no supervision over the manner or form or anything else concerning the work after you entered into your agreement from the blue prints?

* * * * * *

"A. No, not the way I did the work, no, sir.

"Q. Or in the manner of the performance of the work, did they have any supervision? A. No, sir.

"Q. Could you illustrate it like this, what we ordinarily call a turnkey job on a house—on the building of a house, when you entered into that contract, you were to do that for so much, without any further supervision on their part? A. Yes, you could—a turnkey job subject to the inspection and approval of the Texas Electric engineers, when the job was finished."

Appellees' (plaintiffs') witness William Benson, one of the independent contractor's foremen under whom the deceased was working at the time he was fatally injured. testified:

"Q. Did they commence working on that old wire before you got through your job? A. No, I wouldn't say that. I had—I had this wire strung in some time, before they started taking this slack out of it.

* * * * * *

"A. I was told that line would be hot, that morning, when I went to work.

* * * * * *

"Q. * * * You didn't tell Drexel it was going to be hot when he went up that pole? A. Well, I didn't have a chance to tell him.

* * * * * *

"A. Well, when I come out of the truck, Drexel was up the pole.

* * * * * *

"Q. Had the Texas Electric Service Company instructed you as a foreman, to inform your crew that the wire would be hot? A. Well, they said that portion of the line we were working on would be hot at the time.

"Q. I know, but had they instructed you to inform your crew that it would be hot that day? A. Well, I got my orders that morning, from my boss.

"Q. I understand but did your boss instruct you to tell them? A. That's right.

* * * * * *

"Q. * * * Now, do you recall meeting the superintendent of the Texas Electric Service Company that morning and discussing the question of whether that old wire would be hot? A. Well, he stopped that morning and said they would be heating up that new wire.

* * * * * *

"Q. Did they say anything to you then, about notifying your crew that the wire would be hot? A. Well, it was up to me to notify my crew.

* * * * * *

"Q. * * * In what manner would you have inserted this last cutoff or cartridge, the wire being hot? A. Well, I would have used a pair of rubber gloves.

* * * * * *

"Q. Did you have any gloves with you that would have * * * stood that much electric current—how much would they stand? A. Well, up to twenty thousand volts.

666

"Q. Now, when you got out of your truck, you say Holt was up there—did you say anything to him? A. Yes, I hollered to him, but he was—I had the gloves in my hand.

"Q. And you hollered at him. A. I hollered at him about using the gloves; about that time, he throwed that cartridge in there—that cutoff.

\* \* \* \* \* \*

"Q. The fact of the business is, Mr. Benson, at that particular moment, you didn't know the wire was hot, yourself, did you, at that particular moment? A. \* \* \* Oh, yes, before he hit the pole, yes.

"Q. Oh, you saw the jumper? A. Yes.

\* \* \* \* \* \*

"Q. \* \* \* Did the Texas Electric Service Company or their employees—the superintendent know that you were to install these three additional cartridges or cutoffs? A. Well, that, I couldn't tell you.

\* \* \* \* \* \*

"Q. Your boss also told you that morning that you had those three other cutoffs to put in, didn't he? A. No, he told me—he gave them to me at noon, not in the morning.

"Q. When did he tell you that wire would be hot that day? A. Before I pulled out that morning, about—oh, I would say about a quarter to eight."

The jury convicted appellant of the following negligent acts: (1) In having the new line energized while the Aaby Construction Company was undertaking to hang the fuse upon the occasion in question; and (2) in failing to notify Drexel Morgan Holt, Jr., deceased, that the wire was energized prior to the time he attempted to hang said fuse.

It is undisputed that the deceased's foreman was informed twice that the new wire which was strung would be energized in the area wherein the deceased was electrocuted and that said foreman knew at that time the wire was hot. It is noted that the deceased was not informed of the danger in time to protect himself from receiving his fatal injury.

For some reason unknown to appellant, about noon on the day the fatal accident occurred, Aaby Construction Company ordered its men to hang three fuses on the new wire, one being in the energized area. The deceased was a member of the crew designated to perform this duty. Evidently this decision was made after they had finished their work on the north end of the line. Coming south, which was toward Fort Worth, one of the crew in question voluntarily installed the first fuse without instructions from the foreman; the deceased installed the second one voluntarily without an order from his foreman, and he voluntarily attempted to install the third fuse without warning the line was energized, when he received his fatal shock.

We now have before us the facts most favorable to the verdict. The question under discussion is whether the above facts, when viewed most favorably, established a cause of action.

■ Under the above facts established by appellees' own witness, we find as a matter of law that appellant was not negligent in having the new wire energized during the time and place in question.

We find no law preventing an employer from entering upon the premises, after the independent contractor has notified said employer that he is finished with the work in that area, and undertaking to perform an important duty which it owes to the public, to wit, restretching an electric wire where the undisputed testimony shows it was sagging very low, caused by the heavy ice and snow during the winter season. Under the provisions of Article 1436, R.C.S., appellant would no doubt become legally responsible for injuries received from said sagging wire by invitees, licensees or trespassers. Tri-County Electric Cooperative v. Clair, Tex.Civ.App., 217 S. W.2d 681.

While re-entering into the area where the independent contractor has expressly released same to the employer, said employer is not legally required to notify each

employee of the independent contractor that he is so re-entering. It is seldom an employer knows the employees of his independent contractor.

The term "independent contractor" implies the right for said contractor to employ as few or as many employees as he may see fit and generally to perform the duties of the work without intervention from the owner. Perez v. Thompson, Tex. Civ.App., 189 S.W.2d 6; Herndon v. Halliburton Oil Well Cementing Co., Tex.Civ. App., 154 S.W.2d 163; Tanner v. Drake, 124 Tex. 395, 78 S.W.2d 162; 23 Tex.Jur., pp. 542–3. Of course, during a re-entry of this character and while the owner or employer is performing these additional duties, which they have agreed upon, if he observes an employee of the independent contractor attempting to perform a dangerous act, it would be his nondelegable duty to notify said employee of such danger.

The facts in our case fail to show that any employee of appellant knew or had any reason to believe the deceased, or any other employee of the independent contractor, was undertaking to climb this pole where the wire was energized. The independent contractor had told appellant's superintendent and foreman that his men would not be in this area but would be engaged in finishing work to be performed under the contract on other end of the line. Appellant's witness Orr, the foreman who informed appellees' witnesses that the wire was hot on the morning of the 29th, testified that he was some two and a half or three miles from the scene of the accident when it occurred.

Under the testimony in this case, we do not feel disposed to apply the exception, supra, to the effect that the employer is liable for injuries sustained by an employee of an independent contractor while performing work for said employer. This doctrine may apply to the contractor's employees when the work to be done by the independent contractor is so inherently or principally dangerous in nature that prevents the employer from escaping liability by farming out the work to an independent contractor. See 23 Tex.Jur., p. 569, sec. 22; 23 A.L.R., p. 1085. The employer owes a nondelegable duty to provide a safe place to work, that is if he is furnishing same, and in some instances, while doing so, may become liable for injuries received by the independent contractor's employees. 23 Tex.Jur., p. 564, sec. 18.

The employer may be liable for injuries sustained by the independent contractor's employees in cases where the employer furnishes them defective machinery; an unsafe space or place for such machinery to be used, as outlined in the cases of Continental Paper Bag Co. v. Bosworth, Tex.Com. App., 276 S.W. 170, and Burton-Lingo Co. v. Armstrong, Tex.Civ.App., 116 S.W.2d 791, writ refused, also 23 Tex.Jur., p. 568, sec. 21; or in those cases where an owner or employer in maintaining electric wires over which a high voltage of electricity is conveyed knowingly permits an unskilled employee of an independent contractor to work so close to said wires as to become dangerous, without notifying said employee of the danger, as was held in the cases of West Texas Utilities Co. v. Renner, Tex. Com.App., 53 S.W.2d 451; Galveston-Houston Electric R. Co. v. Reinle, 113 Tex. 456, 258 S.W. 803, relied on by appellees.

This law placing upon an owner or employer the duty to use reasonable care to make and keep the premises safe for use of invitees also burdens the general contractor with the duty to use due care to provide a safe place for employees to work on the premises, including employees of subcontractors. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853, relied on by appellees.

The employer may become liable for injury to the independent contractor's employees when the injury is occasioned by said employer's interference or meddling. 27 Am.Jur., p. 510, sec. 31; 23 Tex.Jur., p. 574, sec. 26.

The work which appellant employed the independent contractor to perform was not dangerous. This work merely called for labor of experienced electricians and linemen to lay a "cold" wire upon one end of (eight foot) crossarms they had attached to the poles and to install these fuses, etc. The fatal injury received by the deceased may have been partially caused by the in-

dependent contractor's foreman in not notifying deceased of danger in time to save his life. Said foreman knew at the time that the wire was "hot." His excuse was that he had stopped the truck, in which he, the deceased and eight other employees were riding; was preparing rubber gloves, etc. to furnish one member of the crew to climb a pole and install this last fuse while the wire was hot; he had not noticed the deceased climbing the pole until it was too late, when he called aloud to him about the time he touched the line. The testimony of one of the independent contractor's employees, sitting beside the deceased just before the fatal accident, was to the effect that as the truck came to a stop the deceased placed the fuse in his belt and jumped out of the truck and started immediately to climb the pole. This testimony is only referred to for the purpose of completing the picture, since the jury absolved the deceased of contributory negligence.

In the case of Montgomery v. Houston Textile Mills, Tex.Com.App., 45 S.W.2d 140, the injury arose from the negligent act of the owner while its employees knew the independent contractor would be working on the construction at the time and place in the dangerous area created by its own acts.

■ It must also be borne in mind that in some instances an exception to the rule. before us is not to be confused, commingled with or considered the same as the rule regarding liability of an employer to an invitee who is a third person for negligence of the independent contractor in the performance of such work. See 23 Tex. Jur., p. 574, sec. 25.

It has been held that an employee of an independent contractor is not a third person within the meaning of that rule. Simonton v. Perry, Tex.Civ.App., 62 S.W. 1090.

It has also been held that an employer or the contractee does not owe a duty to exercise ordinary care to protect servants or employees of a contractor from risk arising from the negligence of said contractor or a fellow employee. See cases cited in Humble Oil & Refining Co. v. Bell, Tex.Civ.App., 180 S.W.2d 970, at page 976.

■ We hold that the deceased employee of the independent contractor was not an invitee or licensee of appellant for the purpose of hanging this fuse at the time and place in question. We say this because the independent contractor, employer of deceased, had assured appellant that his work was finished in this area and that no employee of said independent contractor would be therein, upon which agreement appellant had the legal right to rely. Then too, appellant could not have reasonably anticipated a re-entry of the contractor's employees into the area, and if they did so re-enter appellant's employees could not have foreseen the omission of the independent contractor's foreman and derelict of his duty in not warning the deceased of the known danger. The invitation which had been impliedly extended to the deceased. through his employer, Aaby Construction Company, had been effectually revoked in the same manner as so extended. United States Gypsum Co. v. Balfanz, 5 Cir., 193 F.2d 1; 30 Tex.Jur., pp. 863–4, secs. 180–1; 65 C.J.S., Negligence, §§ 43(3), 43(5), 48, pp. 511, 519, 535 and 537.

Be that as it may, we summarize these additional reasons why appellant is not liable for the injury sustained by the deceased:

1. The uncontradicted testimony shows that by the proper use of rubber gloves, which are in evidence, and other safety devices, the work which the deceased was doing at the time of his fatal injury could have been safely performed.

2. It is undisputed that a general rule prevails among electricians, linemen and their foremen to the effect that no such skilled employee shall, without orders from his foreman, climb a pole to work on an energized line which carries sufficient voltage to seriously or fatally injure said employee.

■ 3. There is no evidence which infers that appellant or any of its employees knew that the independent contractor, or one of his foremen, had violated the agreement by ordering this fuse to be installed

in this energized area. 65 C.J.S., Negligence, § 43(5), Withdrawal of Invitation, p. 519.

4. There is no evidence tending to show that any employee of appellant saw the deceased climb the pole when he received his fatal injury, or that any one of its employees was sufficiently close to said pole to have warned the deceased if he had seen him. 30 Tex.Jur., pp. 863–4, secs. 180–1; 65 C.J.S., Negligence, § 48, p. 537.

■ 5. That the work which appellant's employees were performing when the fatal accident occurred to the independent contractor's employee, under the stated facts, was not of such a nature that could be termed an interference with or control of the work contemplated to be performed by the independent contractor; neither was it of a vicarious nature.

6. That the work which the independent contractor's employee was to perform under its contract was not inherently dangerous. 23 Tex.Jur., p. 567.

■ 7. Death of Drexel Morgan Holt, Jr., may be attributed to acts of his employer, the independent contractor, (1) for violating the agreement which it had with appellant, and (2) by omission of its foreman who was insufficiently alert to have informed the deceased of danger in time to save his life. Texas Co. v. Wheat, 140 Tex. 468, 168 S.W.2d 632; American National Insurance Co. v. Denke, 128 Tex. 229, 95 S.W.2d 370, 107 A.L.R. p. 409.

The facts neither establish an issue as to whether appellant was negligent in having the new wire energized at the time and place in question, nor that appellant was negligent in failing to notify the deceased of such fact. See cases cited in Loyd v. Herrington, 143 Tex. 135, 182 S.W. 2d 1003; Perez v. Thompson, supra.

Some of appellant's points raise questions which no doubt would require reversal and a remand of the case for trial, but having come to the conclusion that no cause of action is proven, we reverse the trial court's judgment and render judgment that appellees take nothing.

CULVER, J., not sitting.