IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0871
════════════
 
General Electric Company, 
Petitioner,
 
v.
 
Arthur Lee Moritz, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Second District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 17, 
2006
 
 
Justice Green, joined by Chief Justice Jefferson and Justice Johnson, dissenting.
 
 
The Court 
today abandons long-standing principles of premises liability law in its effort 
to shield landowners and occupiers from liability for known premises defects. In 
doing so, the Court articulates an exceptional no-duty rule for the premises 
liability claims of independent contractors= employees, but then fails 
to adhere to it. According to the Court, the existence of a premises owner=s duty in these cases ought 
to be governed by the general idea that an independent contractor is empowered 
to do whatever is necessary to carry out work in a safe manner, and that the 
duty of care should therefore fall on the employer rather than on the premises 
owner. ___ S.W.3d at ___. Placing the duty on the 
independent contractor makes sense when the independent contractor is given 
control over the workplace conditions, but it makes no sense at all when, as 
here, the independent contractor lacks that control. The Court purports to 
recognize the difference,[1] but refuses to draw the distinction. 
Moreover, the practical effect of the Court=s holding is to overrule 
Parker v. Highland Park, Inc., 565 S.W.2d 512 (Tex. 1978), and improvidently reintroduce the discredited 
no‑duty concept back into Texas premises liability 
jurisprudence. This outcome conflicts not just with our own settled law, but 
also with comparative liability principles that govern virtually all other 
jurisdictions. Contrary to the Court, I would follow Parker and hold that 
the court of appeals correctly remanded Arthur Moritz=s premises defect claim for 
trial. Accordingly, I respectfully dissent.
I
 
Moritz=s status as an independent 
contractor does not relieve the premises owner of the duty to warn of premises 
defects. General Electric Company contracted with Moritz=s employer to pick up 
electrical supplies at GE=s warehouse for delivery to 
GE=s customers. But 
Moritz had no controlCcontractual or otherwiseCover the condition 
of his work environment at the GE warehouse; control over the warehouse premises 
was retained by GE and/or Tarrant County Limited Partnership (TCLP) and CB 
Richard Ellis, Inc.[2] While Moritz was allowed to use the 
warehouse ramp for loading supplies on his truck, he had no authority to alter 
the premises conditions, and thus could not require that guard rails be placed 
along the ramp for his safety. Moritz controlled only the specific location and 
manner in which he loaded his truck. Moritz=s circumstances at the 
warehouse, therefore, were little different from the ordinary grocery shopper to 
which the Court alludes while trying to make the opposite point, ___ S.W.3d at 
___. Except that one had a wholesale as opposed to a retail purpose, the status 
of each was functionally the same. And while it is well established that a 
grocery store owner owes its invitee shopper a duty of care, even for open and 
obvious defects, the Court today says that no one owes Moritz a similar duty, 
solely because of his independent contractor status. This unlikely outcome 
conflicts with principles that have been settled in our state for more than 
thirty years.
We have long 
recognized that the essential test for assigning duty in premises liability 
cases is the determination of who has control of the premises. See 
Fifth Club, Inc. v. Ramirez, 196 S.W.3d 788, 791B92 (Tex. 2006); Shell 
Oil Co. v. Khan, 138 S.W.3d 288, 294 (Tex. 2004); Dow Chem. Co. v. 
Bright, 89 S.W.3d 602, 606 (Tex. 2002); Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 783 (Tex. 
2001); Koch Ref. Co. v. Chapa, 11 S.W.3d 153, 155 (Tex. 1999) (per curiam); Elliott‑Williams Co. v. Diaz, 9 S.W.3d 801, 
803B04 (Tex. 1999); 
Coastal Marine Serv. of Tex., Inc. v. Lawrence, 
988 S.W.2d 223, 225B26 
(Tex. 1999) (per curiam); Hoechst‑Celanese Corp. v. 
Mendez, 967 S.W.2d 354, 355B57 (Tex. 1998) (per curiam); Clayton W. Williams, Jr., Inc. v. Olivo, 952 
S.W.2d 523, 528 (Tex. 1997); Exxon Corp. v. Tidwell, 867 S.W.2d 19, 23 
(Tex. 1993); Redinger v. Living, Inc., 
689 S.W.2d 415, 417B18 
(Tex. 1985). Absent control over the premises, no duty to warn or make safe 
arises with respect to any dangerous premises condition, but where the landowner 
controls the premises, the level of control defines the contours of the duty. 
See, e.g., Redinger, 
689 S.W.2d at 417B18. Just as the 
control requirement informs negligent activity liability, it also explains duty 
in premises defect cases. See Olivo, 952 S.W.2d at 528 (AFor the general 
contractor to be liable for negligence, its supervisory control must relate to 
the condition or activity that caused the injury.@). Thus, in 
slip‑and‑fall cases, store owners with control over dangerous floor conditions 
owe a commensurate duty to their shopper customers. See 
Brookshire Grocery Co. v. Taylor, 222 S.W.3d 406, 407B08 (Tex. 2006); Wal-Mart Stores, Inc. v. Reece, 81 
S.W.3d 812, 813B14 
(Tex. 2002); Hernandez v. Kroger Co., 
711 S.W.2d 3, 4 (Tex. 1986) (per curiam); Corbin v. Safeway Stores, Inc., 648 S.W.2d 
292, 295 (Tex. 
1983). Considering all of this, it is difficult to see why the Court 
would treat Moritz differently.
The Court 
says that Moritz=s 
status as an independent contractor is the determining factor. But if duty in 
these kinds of cases is to be determined on the basis of the plaintiff=s employment status, then 
the rule must also apply to the shopper who buys groceries for his disabled 
employer, or the FedEx employee who delivers a package to the grocery store 
manager. These are independent contractors just like Moritz, but under the 
Court=s rule, the 
store owner owes a duty only to the shopper who shops for himself, but not to 
the independent contractor who walks the same aisles in the same way. The 
Court=s attempt to 
explain this troubling dichotomy falls short.
The Court 
uses independent contractor status as a proxy for what really matters: control 
over the premises condition. As it explains, A[p]lacing the duty on an 
independent contractor to warn its own employees or make safe open and obvious 
defects ensures that the party with the duty is the one with the ability to 
carry it out.@ ___ 
S.W.3d at ___ (emphasis added). The Court justifies this blanket rule for 
independent contractors by assuming that all independent contractors are given 
control over all aspects of their work. Independent contractor status as a 
substitute for control fails in Moritz=s case because the 
underlying assumption is plainly wrong. Some independent contractors are given 
control over the premises on which they work, and in those cases the premises owner=s duties may be relieved. 
But not all independent contractors are given the requisite control, and when 
they are notCas in the case of 
Moritz and the FedEx deliverymanCthe rationale for 
relieving the owner=s 
duty disappears entirely.[3]
Moreover, 
contrary to the Court=s assertion, id. 
at ___, GE=s control over Moritz=s activity does not 
govern Moritz=s 
premises defect claim. By definition, a premises defect claim requires 
control over the allegedly dangerous condition. E.g., Redinger, 689 S.W.2d at 417. 
That is why the commensurate duties relate not to the plaintiff=s activity, but to 
the defendant=s propertyCthe premises owner 
owes invitees a duty to warn of dangerous property conditions; there is no duty 
to warn invitees against their own dangerous activities. See State v. Williams, 940 S.W.2d 583, 584 (Tex. 1996) (per curiam). In light of our insistence that negligent 
activity and premises defect claims be evaluated independently, see, 
e.g., Olivo, 952 S.W.2d at 527B30, the Court=s use of negligent activity 
arguments in a premises defect claim fails to survive close scrutiny.
 Rather 
than cling to false distinctions based on independent contractor status or 
control over Moritz=s 
activities, the way to resolve this case is to determine who actually had 
control over the premises condition. Neither Moritz nor his employer had control 
over the premises condition that resulted in Moritz=s injury. Moritz could not 
change the condition of the ramp, only GE could. As a result, GE owed a duty to 
either warn Moritz of the dangerous premises condition or to make it safe.
II
The 
Court=s other reason 
for shielding the premises owner from liability is its assertion that premises 
owners owe duties only with respect to concealed defects. ___ 
S.W.3d at ___. Parker v. Highland Park, Inc. explicitly confronted 
the no‑duty argument that the Court today applies:
 
The Ano duty@ doctrine is this: the 
occupier of land or premises is required to keep his land or premises in a 
reasonably safe condition for his invitees. This includes a duty of the occupier 
to inspect and to discover dangerous conditions. His duty is to protect his 
invitees from dangers of which he, the occupier, knows, 
or (because of his duty to inspect) of which he should know in the exercise of 
ordinary care. If there are dangers which are not open and obvious, he is under 
a duty to take such precautions as a reasonably prudent person would take to 
protect his invitees therefrom or to warn them 
thereof. But if there are open and obvious dangers of which the invitees know, 
or of which they are charged with knowledge, then the occupier owes them Ano duty@ to warn or to protect the 
invitees. This is so, the cases say, because there is Ano duty@ to warn a person of things 
he already knows, or of dangerous conditions or activities which are so open and 
obvious that as a matter of law he will be charged with knowledge and 
appreciation thereof.
 
565 S.W.2d 
512, 516 (1978) (quoting Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 378 
(Tex. 1963)) 
(citations omitted). After full consideration of the no‑duty jurisprudence, both 
in theory and in practice, Parker abolished it:
 
We now 
expressly abolish the so‑called no‑duty concept in this case and, as expressed 
in Farley, Ahenceforth in the 
trial of all actions based on negligence . . . .@ The reasonableness of an 
actor=s conduct under 
the circumstances will be determined under principles of contributory 
negligence. While this case arose prior to the adoption of the comparative 
negligence statute, in the trial of cases under that statute, one who is contributorily negligent is still entitled to have his 
negligence compared with that of the other participants in the event.
 
 . . . .
 
There are 
many instances in which a person of ordinary prudence may prudently take a risk 
about which he knows, or has been warned about, or that is open and obvious to 
him. His conduct under those circumstances is a matter which bears upon his own 
contributory negligence. . . .
 
. . . 
.
 
A 
plaintiff=s knowledge, 
whether it is derived from a warning or from the facts, even if the facts 
display the danger openly and obviously, is a matter that bears upon his own 
negligence; it should not affect the defendant=s duty.
 
 
Id. at 517B21 (quoting Farley v. M 
M Cattle Co., 529 S.W.2d 751, 758 (Tex. 1975)). Of key 
importance to Parker was the Legislature=s adoption of the 
comparative negligence scheme:
 
The 
legislature by its adoption in 1973 of the comparative negligence statute 
evidenced a clear policy purpose to apportion negligence according to the fault 
of the actors. That system replaced the harsh system of absolute victory or 
total defeat of an action by such doctrines as contributory negligence, 
voluntary assumption of risk, and also the included doctrine known as no‑duty. . . . The survival of no‑duty 
(plaintiff=s knowledge 
and appreciation) as a total bar is incompatible with the legislative purpose of 
the comparative negligence statute.
 
 
Id. at 518 
(citations omitted); see also Farley, 529 S.W.2d at 758 (A[T]he Legislature 
has now adopted comparative negligence and thus evidenced its clear intention to 
apportion negligence rather than completely bar recovery.@). Because comparative 
negligence still governs torts in Texas, see Tex. Civ. Prac. & Rem. Code ch. 33, this case should be simple. GE does not dispute that 
the ramp is dangerous, and summary judgment evidence from GE=s warehouse manager 
indicated that persons in Mortiz=s position were likely to 
be injured despite the obviousness of the ramp=s condition. As a result, 
the question of whether or not the warehouse ramp=s condition was concealed 
plays no part in the question of duty. If, in fact, the ramp=s defect was Aopen and 
obvious,@ that condition 
could be weighed against Moritz only on the question of comparative 
negligence.
Concluding 
otherwise, the Court today resurrects what Parker abolished by simply 
changing the question. That is, when the answer to AWas the defect 
concealed?@ is ANo,@ the answer to ADid the plaintiff 
know/Should the plaintiff have known of the defect?@ will always be 
AYes.@[4] The Court=s reasoning essentially 
overrules Parker by reducing its holding to a requirement that, in 
determining duty, courts ask the former question instead of the latter. But this 
cannot be because Parker removed both of those questions from duty 
analysis. The no‑duty doctrine said that Aif there are open 
and obvious dangers of which the invitees know, or of which they are charged 
with knowledge, then the occupier owes them >no duty= to warn or to protect the 
invitees,@ and 
Parker Aexpressly 
abolish[ed] the so‑called no‑duty concept.@ 565 S.W.2d at 516B17 (emphasis added). The 
Court cannot avoid this result by framing the question as one of law, ___ S.W.3d 
at ___, because when the Court decides that a condition=s obviousness means no 
duty, its inquiry is no different than what a jury 
would do when deciding whether Moritz was himself negligent. In both instances, 
Moritz is faulted because he was aware of the condition of the property and 
encountered it anyway. Under Parker and the comparative negligence 
scheme, that fault question is no longer a part of the duty analysis.
In an attempt 
to determine what Parker left behind after abolishing the no‑duty 
doctrine, the Court misinterprets Dixon v. Van Waters & Rogers, 682 
S.W.2d 533 (Tex. 1984) (per curiam). See ___ 
S.W.3d at ___ & nn.21B28. To be sure, 
Dixon was correct when it said that Parker=s Arule that the 
plaintiff does not have the burden to obtain findings that disprove his own 
fault does not, however, mean that a plaintiff is excused from proving the 
defendant had a duty and breached it.@ Dixon, 682 S.W.2d 
at 533B34. But 
Parker itself made clear what part of duty a plaintiff must still 
prove:
 
These 
authorities dispel the idea that anything that can be seen precludes recovery 
because it is open and obvious. For these reasons an open and obvious condition 
should not be confused with the plaintiff=s initial and separate 
burden to prove knowledge of danger on the part of the owner.
 
 
565 S.W.2d at 
520B21 (quoting 
Camp v. J. H. Kirkpatrick Co., 250 S.W.2d 413, 417B18 (Tex. Civ. App.CSan Antonio 1952, 
writ ref=d n.r.e.)) (emphasis added). 
Dixon 
neither said nor implied that duty depends on concealment. See Dixon, 682 S.W.2d at 533B34. The same is true 
for all of the court of appeals opinions cited by the Court, which merely say 
that a plaintiff must prove the existence of a duty, not that duty depends on 
concealment. See Bill=s Dollar Store, Inc. 
v. Bean, 77 S.W.3d 367, 370 (Tex. App.CHouston [14th Dist.] 
2002, pet. denied) (AThe Parker 
court abolished the additional requirement [of proving the absence of his own 
subjective knowledge and appreciation of any danger], but, contrary to appellee=s assertion, did not change 
the underlying obligation to establish a duty on the part of a defendant and a 
violation of that duty.@); Delgado v. Houghston, No. 08‑99‑00044‑CV, 2000 WL 678774, at *5 
(Tex. App.CEl Paso May 25, 
2000, no pet.) (not designated for publication); Joachimi v. City of Houston, 712 S.W.2d 861, 
863 n.1 (Tex. App.CHouston [1st Dist.] 
1986, no writ) (AAlthough 
Parker abolished >no duty,= as meaning that a 
plaintiff does not have to prove that he lacked knowledge and appreciation, he 
must still prove, however, that the defendant had a duty and breached it.@); Bryant v. Gulf Oil 
Corp., 694 S.W.2d 443, 445 (Tex. App.CAmarillo 1985, writ 
ref=d n.r.e.) (AThe Parker 
court abolished the additional requirement but did not change the underlying 
obligation to establish a duty on the part of a defendant and a violation of 
that duty.@); Thomas v. 
Internorth, Inc., 790 F.2d 1253, 1256 (5th Cir. 
1986) (AThe abrogation of 
the no‑duty rule does not relieve a plaintiff from proving that the defendant 
had a duty and breached it.@).[5]
Contrary to 
the Court=s 
suggestion, see ___ S.W.3d at ___ & n.1, we have remained consistent 
with the rule in Parker, with one possible exception. Islas, Khan, and Lawrence concluded 
that there was no duty for reasons unrelated to concealment. Cent. Ready Mix Concrete Co. v. Islas, 228 S.W.3d 649, 651 (Tex. 2007) (no duty because 
of no control over the allegedly negligent activity); Shell Oil Co. v. 
Khan, 138 S.W.3d 288, 295B98 (Tex. 2004) (no duty 
because of no control over the allegedly defective premises); Coastal Marine 
Serv. of Tex., Inc. v. Lawrence, 988 S.W.2d 223, 
225B26 (Tex. 1999) 
(per curiam) (no duty because of no control over the 
allegedly negligent activity). Only Wilhelm v. Flores would appear to be 
in conflict with Parker, but it was never argued as a premises liability 
case, and was decided with neither citation to Parker nor discussion of 
the apparent conflict. 195 S.W.3d 96, 98 (Tex. 2006) (per curiam). We should continue to adhere to 
Parker=s 
comprehensive and explicit review of first principles.[6]
The 
Court=s employment of 
Delhi-Taylor Oil Corp. v. Henry, 416 S.W.2d 390 (Tex. 1967), ___ S.W.3d at 
___, is also puzzling because its authority has been largely, if not completely, 
abrogated by the enactment of the comparative liability statute and by 
Parker, a later decided case. The Court=s error begins by 
misstating the meaning of Delhi-Taylor, arguing that it stands for the 
proposition that no one Abesides Moritz=s employer must owe him a 
duty here.@ ___ S.W.3d at ___. 
This is simply not accurate. Delhi-Taylor was not about whether a duty 
was owed. In that case, the defendants did not dispute that they owed a duty to 
warn about dangerous gas lines; the question was whether warnings to both the 
independent contractor and its employees were required, or whether that duty 
could be discharged by warning only the independent contractor. 
Delhi‑Taylor, 416 S.W.2d at 392. The Aunfair@ and Aintolerable@ burden cited by the Court 
was not simply the burden of a duty to warn, but the burden of having to warn 
both the independent contractor and every one of the independent contractor=s employees. Id. at 394 (A[T]here is no sound 
basis for requiring that the employees should be twice warned.@ (emphasis added)). In 
short, Delhi-Taylor=s holding, to the extent 
that it retains any viability, is limited to the scope of an existing duty to 
warn and, of course, that has no application to this case, which focuses 
entirely on whether the landowner had a duty to warn at all. Id. at 
392B94. It 
should also be noted that Delhi‑Taylor is not relevant to the open and 
obvious question because the premises defect in that case was concealed. 
Id. at 
394. And even if the issue in this case were the adequacy of GE=s warningCwhich it is notCGE=s defense would fail under 
Delhi-Taylor because GE warned neither Moritz nor his employer.
But to the 
extent that Delhi-Taylor can be viewed as supporting an open and obvious 
limitation, it was overruled by Parker. In its discussion of duty, the 
existence of which no one disputed, Delhi-Taylor cited six Texas cases, every one of 
which was part of the no‑duty jurisprudence that has now been abolished. 
Id. at 392, 
394.[7] After Farley and Parker, 
not a single Texas court has cited Delhi-Taylor in 
support of the Court=s 
position.[8] And despite Farley and 
Parker=s 
unequivocal language, the Court steadfastly refuses to recognize that any open 
and obvious limitation in Delhi-Taylor was abolished by the 
Legislature=s adoption 
of comparative negligence.[9]
Admonishing 
against too much reliance on Parker, the Court further argues that Aduty depends on a 
legal analysis balancing a number of factors, including the risk, forseeability, and likelihood of injury, and the 
consequences of placing the burden on the defendant.@ ___ S.W.3d at ___. 
Yet the Court fails to engage in the balancing that it claims is mandatory. More 
importantly, it fails to recognize that the balancing need not be done anew in 
every premises defect case because it has already been accomplished by the 
scores of common law decisions in our courts. That balancing produced not just 
Parker, but a consistent line of cases recognizing that the various 
permutations of plaintiff=s negligence are no longer 
a part of duty. See French v. Grigsby, 571 S.W.2d 867 (Tex. 1978) 
(per curiam) (rejecting last clear chance as an 
absolute defense in favor of comparative negligence); Davila v. Sanders, 
557 S.W.2d 770, 771 (Tex. 1977) (per curiam) 
(rejecting imminent peril as an absolute defense in favor of comparative 
negligence); Farley, 529 S.W.2d at 758B59 (rejecting voluntary 
assumption of risk as an absolute defense in favor of comparative negligence). 
No Amashing@ of laws has occurred. 
See ___ S.W.3d at ___. As the Court noted just last year, our decisions 
have simply Arejected similar 
efforts to compartmentalize negligence in rigid categories@ and Adiscarded categories 
like imminent‑peril, last‑clear‑chance, and assumption‑of‑the‑risk in favor of a 
general submission of comparative negligence.@ Jackson v. Axelrad, 221 S.W.3d 650, 654 (Tex. 2007). While the 
plaintiff=s negligence 
could ultimately prohibit recovery when compared to the defendant=s negligence, it will not 
defeat the claim at the duty stage of a lawsuit. When properly read, our cases 
compel the conclusion that Moritz=s appreciation of the 
ramp=s danger does not 
extinguish GE=s 
duty.
III
Comparative 
negligence is not rare, and as one of forty-six states to adopt the doctrine, we 
benefit from a wealth of decisions addressing the question before us today. 
See Restatement (Third) of Torts: 
Apportionment of Liability ' 7 cmt. a (2000). Yet the Court=s decision conflicts with 
the principles that are settled in nearly every other jurisdiction, the most 
fundamental of which assigns the comparative fault determination to the finder 
of fact, not the court:
 
' 
7. Effect of Plaintiff=s Negligence When Plaintiff 
Suffers an Indivisible Injury
 
Plaintiff=s negligence . . . that is the legal cause of an 
indivisible injury to the plaintiff reduces the plaintiff=s recovery in proportion to 
the share of responsibility the factfinder assigns 
to the plaintiff . . . .
 
 
Id. ' 7 (emphasis added). Never 
does the Restatement distinguish duties by identifying independent contractors. 
Instead, the duty rule for obvious premises defect cases is based on forseeability and danger:
 
A 
possessor of land is not liable to his invitees for physical harm caused to them 
by any activity or condition on the land whose danger is known or obvious to 
them, unless the possessor should anticipate the harm despite such knowledge or 
obviousness.
 
 
Restatement (Second) of 
Torts ' 343A (1965). 
The section=s comment 
explains the rule much like Parker did:
 
There 
are, however, cases in which the possessor of land can and should anticipate 
that the dangerous condition will cause physical harm to the invitee 
notwithstanding its known or obvious danger. In such cases the possessor is not 
relieved of the duty of reasonable care which he owes to the invitee for his 
protection. This duty may require him to warn the invitee, or to take other 
reasonable steps to protect him, against the known or obvious condition or 
activity, if the possessor has reason to expect that the invitee will 
nevertheless suffer physical harm.
 
Such 
reason to expect harm to the visitor from known or obvious dangers may arise, 
for example, where the possessor has reason to expect that the invitee=s attention may be 
distracted, so that he will not discover what is obvious, or will forget what he 
has discovered, or fail to protect himself against it. Such reason may also 
arise where the possessor has reason to expect that the invitee will proceed to 
encounter the known or obvious danger because to a reasonable man in his 
position the advantages of doing so would outweigh the apparent risk. In such 
cases the fact that the danger is known, or is obvious, is important in 
determining whether the invitee is to be charged with contributory negligence, 
or assumption of risk. It is not, however, conclusive in determining the duty of 
the possessor, or whether he has acted reasonably under the circumstances.
 
 
Id. ' 343A cmt. f (citations omitted). 
GE does not contest the danger posed by the ramp, and it does not contend that 
Moritz=s fall and 
injury were not forseeable results of the ramp=s lack of a guard rail. 
GE=s only argument is 
that the obviousness of the premises condition prevents any duty from arising. 
The Restatement defeats that argument, as its most analogous illustration 
demonstrates:
 
The A Drug 
Store has a soda fountain on a platform raised six inches above the floor. The 
condition is visible and quite obvious. B, a customer, discovers the condition 
when she ascends the platform and sits down on a stool to buy some ice cream. 
When she has finished, she forgets the condition, misses her step, falls, and is 
injured. If it is found that this could reasonably be anticipated by A, A is 
subject to liability to B.
 
 
Id. ' 343A cmt. f, illus. 3. This case 
easily fits that illustration.
The 
Court=s holding today 
conflicts with our premises liability jurisprudence, the careful deliberations 
of the drafters of the Restatement, and the modern formulation of comparative 
liability.[10] If Parker and our comparative 
liability scheme did not align so well with other jurisdictions and authorities, 
this case might present a more challenging question. But when our jurisprudence 
is in accord with the great weight of authority, the conclusion is clear: The 
premises owner/occupier in this case owed a duty of care to Moritz, regardless 
of his awareness of the danger posed by the ramp.
IV
I agree with 
the Court=s 
disposition of Moritz=s negligent activity claim, 
which was directed solely at GE. GE did not control Moritz=s activities in securing 
the load on his truck, and GE thus cannot be held liable for Moritz=s resulting injuries. But 
Moritz=s petition 
alleged that GE knew or should have known that the absence of guard rails 
created an unsafe and unreasonably dangerous condition. Neither motion for summary judgment challenged those allegations, 
and no party argues otherwise here. As a result, I would hold that the 
trial court should not have granted summary judgment on any form of the 
defendants= no‑duty 
argument. I therefore dissent from the Court=s judgment because it fails 
to affirm the court of appeals judgment remanding the premises defect claim for 
trial.
 
 
_________________________
PAUL W. 
GREEN
JUSTICE
 
OPINION DELIVERED: June 13, 
2008






[1] ___ S.W.3d at 
___ (A[T]he 
landowner=s duty is limited because control is being turned over 
to someone else in a way that is not true of shoppers, sightseers, or other 
business invitees.@).

[2] In the trial 
court summary judgment proceedings, TCLP and Ellis argued that they owed Moritz 
no duty under the premises defect claim because they did not control the ramp 
conditions. Because of the Court=s disposition, it does not reach this issue. I would 
hold that the trial court should have denied TCLP and Ellis=s motion for summary judgment on the issue of control 
because TCLP owns both the warehouse structure and the surrounding outdoor 
premises, and because the lease provisions between GE and TCLP do not, as a 
matter of law, relinquish TCLP and Ellis=s control over the ramp=s condition. But for the sake of simplicity throughout 
the remainder of this opinion, I refer to GE, TCLP, and Ellis collectively as 
GE.

[3] The 
Court=s blanket assumption that all independent 
contractors are Aspecial 
expert[s]@ in every subject 
that may present a premises liability claim is similarly unsupported. See 
___ S.W.3d at ___.

[4] Cf. Restatement 
(Second) of Torts ' 289 & cmt. e (1965) (AThe actor 
must exercise the perception of a reasonable man under like circumstances. This 
means that he must to a reasonable degree make use of his senses to become aware 
of his surroundings, and of any danger involved in them.@); see also id. ' 464.

[5] The 
Restatement likewise demonstrates that the Court misapprehends what 
Parker left intact as a complete bar to a plaintiff=s recovery. Immediately after explaining that a 
plaintiff=s negligence cannot completely bar recovery, the RestatementCjust like DixonCclarifies what 
remains:
 
Under comparative responsibility, most courts merge 
several defenses into plaintiff=s negligence, such as implied assumption of the risk, 
avoidable consequences, and mitigation of damages. See ' 3, Comments b, c; Duncan v. Cessna Aircraft Co., 665 S.W.2d 414 (Tex. 1984). These 
defenses are based on the factfinder=s evaluation of the reasonableness of the 
plaintiff=s conduct. Other defensesCsuch as contractual 
assumption of risk, immunity, privilege, statute of limitation, and certain 
statutory defenses under the Uniform Commercial CodeCare based on other 
policy considerations. No reported decision has applied them as a percentage 
reduction. They continue to constitute an absolute bar to recovery.
 
Restatement (Third) of Torts: 
Apportionment of Liability ' 7 cmt. k (2000).

[6] See 
Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 854B55 
(1992).

[7] Halepeska, 371 S.W.2d 368, was expressly abrogated by 
Parker, 565 S.W.2d at 516, 519. See Dillon v. Wal‑Mart Stores, 
Inc., No. 98-40228, 1998 WL 723859, at *1 (5th Cir. Oct. 5, 1998) 
(recognizing abrogation). Robert E. McKee, General Contractor, Inc. v. 
Patterson, 271 S.W.2d 391 (Tex. 1954), was also expressly abrogated by 
Parker, 565 S.W.2d at 513, 516B19. See Edco Prod., Inc. v. Hernandez, 794 S.W.2d 69, 
75 (Tex. App.CSan Antonio 1990, 
writ denied) (recognizing abrogation). Western Auto Supply Co. v. 
Campbell, 373 S.W.2d 735 (Tex. 1963), 
merely followed Halepeska and McKee, and 
Hall v. Medical Building of Houston, 251 S.W.2d 497 (Tex. 1952), was 
McKee=s predecessor. Tyler v. McDaniel, 386 S.W.2d 552 
(Tex. Civ. App.CDallas 1965, writ 
ref=d n.r.e.), was abrogated by 
Farley, 529 S.W.2d at 758. Texas Electric Service Co. v. Holt, 249 
S.W.2d 662 (Tex. Civ. App.CFort Worth 1952, 
writ ref=d n.r.e.), has no conclusion 
on any issue relevant to Delhi-Taylor. See id. at 668 
(AWe hold that 
the deceased employee of the independent contractor was not an invitee or 
licensee of appellant for the purpose of hanging this fuse at the time and place 
in question.@). Thirty years have passed since any Texas court has cited 
Campbell, Hall, Tyler, or Holt favorably in a 
premises liability case.

[8] To the 
contrary, at least three courts of appeals have expressly recognized that 
Parker had this effect on Delhi‑Taylor. Union Carbide Corp. v. 
Burton, 618 S.W.2d 410, 414 (Tex. Civ. App.CHouston [14th Dist.] 
1981, writ ref=d n.r.e.); Baca v. Sand, 
Inc., 600 S.W.2d 840, 843 (Tex. Civ. App.CHouston [1st Dist.] 
1980, writ ref=d n.r.e.); Schley v. 
Structural Metals, Inc., 595 S.W.2d 572, 579B82 (Tex. Civ. App.CWaco 1979, writ 
ref=d n.r.e.); see Corbin v. 
Safeway Stores, Inc., 648 S.W.2d 292, 298 (Tex. 1983) (AThe 
invitee=s knowledge and conduct are now factors the jury must 
weigh in determining whether the invitee was contributorily negligent, not whether the premises occupier 
was negligent.@).

[9] The courts of 
appeals have not hesitated to apply Parker to cases involving independent 
contractors, and for good reason. The court in Schley explained the 
perverse incentives that the Court=s interpretation creates:
 
To hold that the Delhi‑Taylor doctrine survived 
Parker would result in the following incongruity: The injured workman who 
confronted an open and obvious hazard or one of which he had personal knowledge 
would not automatically be barred from recovery; he would be able to go to the 
jury under principles of contributory negligence. However, the injured workman 
who did not have personal knowledge of the dangerous condition by warning or by 
other circumstance would be barred from recovery by the fact that his employer 
knew of the condition. The landowner who personally warned the injured workman 
of the dangerous condition or who had a dangerous condition on his premises that 
was open and obvious would not automatically be entitled on those facts to a 
defense verdict, but if the landowner did nothing and the workman's employer 
happened to know of the dangerous condition, or if the landowner warned only the 
workman's supervisor, the landowner would be entitled to a complete defense 
verdict. The landowner who warned one supervisor would fare better than one who 
warned each individual workman but no supervisors. We cannot believe the Parker 
decision was intended to create a set of rules whereby knowledge of a dangerous 
condition by supervisory personnel of the injured workman would bar recovery, 
but personal knowledge by the workman would not; and it is our view that the 
Delhi‑Taylor rule was necessarily set aside by Parker.
 
 595 S.W.2d at 581B82 (citations omitted).

[10] See 
Ernest H. Schopler, Annotation, Modern Status of 
the Rule Absolving a Possessor of Land of Liability to Those Coming thereon for 
Harm Caused by Dangerous Physical Conditions of which the Injured Party Knew and 
Realized the Risk, 35 A.L.R. 3d 230 (1971 & Supp. 2008); 1 Texas 
Torts & Remedies 20.05[2][a] (J. Hadley Edgar Jr. & James B. Sales, 
eds. 2008); 4 Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, 
Harper, James and Gray on Torts '' 21.1B.2, 21.5, 21.8 (3d ed. 2007); 5 id. '27.13; 3 Stuart M. Speiser, 
Charles F. Krause & Alfred W. Gans, The American Law of Torts '' 13.35, 14.6 (1986 & Supp. 2001); W. Page 
Keeton, Prosser & Keeton on the Law of Torts ' 61 (5th ed., Lawyer=s ed. 1984).