Affirmed and Opinion filed April 8, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00232-CV

___________________

 

Heartland Holdings, Inc.,
Appellant

 

V.

 

U.S. Trust Company of Texas N.A. and U.S.
Trust Corporation, Appellees



 



 

On
Appeal from the 281st District Court

Harris County,
Texas



Trial Court Cause No. 2002-25256

 



 

 

OPINION

            Heartland Holdings, Inc. (“HHI”) appeals from the
trial court’s grant of a plea to the jurisdiction and, in the alternative, motion
for summary judgment filed by appellees’, U.S. Trust Company of Texas, N.A. and
U.S. Trust Corporation (collectively “U.S. Trust”).  HHI sued U.S. Trust for alleged
violations of trustee duties under various, related, municipal bond indentures. 
In its plea/motion, U.S. Trust asserted, among other things, that HHI did not
have the right to sue under the indentures because it was not listed by name on
the bond register established pursuant to the indentures.  On appeal, HHI
contends principally that (1) in order to sue on the bonds, it was not required
to be listed by name on the bond register; (2) the legal doctrines of issue
preclusion and judicial estoppel bar U.S. Trust from arguing to the contrary in
the present action; (3) even if being listed by name in the register was
required, HHI has now fulfilled that requirement; (4) the trial court erred in
refusing to permit HHI to amend its pleadings after HHI became listed by name
on the bond register; and (5) the court erred in dismissing HHI’s claims “with
prejudice.”  We affirm.

I.  Background

            The
municipal bonds forming the basis of HHI’s lawsuit were issued between 1996 and
1999 for the purpose of financing, acquiring, or renovating several individual healthcare
facilities.  Certain inter-related entities, deemed the “Heritage entities” by
the parties, were to be the recipients of the bond proceeds for the stated
purposes.  The agreements under which the bonds were issued were referred to as
the bond indentures.  The parties to each of the indentures were the bond trustee
and the Heritage entity slated to receive the proceeds.  U.S. Trust was the
original trustee on each of the bonds and continued in this capacity until
2001.[1] 
Ultimately, all of the bonds subject of this lawsuit went into default.

            HHI
purchased the bonds on the secondary market in 2002.  HHI held the bonds in “street
name,” meaning that while HHI was the beneficial owner of the bonds (i.e.,
entitled to sell and receive disbursements), the bonds were physically held by
a depository firm, the Depository Trust Company (“DTC”), and were registered in
the name of DTC’s nominee, “Cede & Co.”  HHI obtained beneficial ownership
of the bonds through an assignment from the State of Wisconsin Investment Board
(“SWIB”).  SWIB, in turn, had obtained the bonds from certain municipal bond
funds that had been offered by Heartland Group, Inc. and managed by Heartland
Advisors, Inc.

In 2001, a receiver
appointed to oversee the “Heartland Funds” filed suit against U.S. Trust in federal
court.  The case was subsequently transferred to the United States District
Court for the Central District of California.  In that lawsuit, the Heartland
Receiver alleged, among other things, that U.S. Trust had violated the terms of
the bond indentures by improperly disbursing bond proceeds to various Heritage
entities.  U.S. Trust defended that lawsuit, in part, by asserting that the Heartland
Receiver was not entitled to sue to enforce terms of the indentures because the
Heartland Funds no longer owned the bonds.  Based on this argument, the
district court granted partial summary judgment favoring U.S. Trust.

After purchasing the
bonds in 2002, HHI filed the present lawsuit against U.S. Trust.[2]  HHI alleged that
U.S. Trust had violated the terms of the indentures by improperly releasing
bond proceeds to the Heritage entities and by failing to adequately notify bondholders
regarding the Heritage entities’ alleged misuse of bond proceeds.  In 2006,
U.S. Trust filed a number of dispositive motions, including multiple pleas to
the jurisdiction and motions for summary judgment.  On October 17, 2006, the
trial court granted one of U.S. Trust’s pleas to the jurisdiction; the court
subsequently granted HHI’s motion to reconsider, thus vacating its order of
dismissal.[3] 
On November 30, 2007, with the court’s permission, U.S. Trust filed a “Restated
and Supplemental Plea to the Jurisdiction and, in the Alternative, Motion for
Summary Judgment.”  In that pleading, U.S. Trust argued that HHI was not
entitled to sue for enforcement of the bond indenture because it was neither a
party to, nor an intended third-party beneficiary of, the indenture.

In response to U.S.
Trust’s dispositive pleading, HHI principally argued that as an owner of the
bonds at issue, it was entitled to sue for enforcement.  In support of their
respective arguments, both parties pointed to the same sections of the
indentures, section 1.01 and section 1.10.  Although there are some minor
differences in the language from indenture to indenture, the indentures all
read substantially as follows:

SECTION 1.01          Definitions.

For all purposes of this
Indenture, except as otherwise expressly provided or unless the context
otherwise requires:

A.        The terms defined in
[Article One] have the meanings assigned to them in this Article . . . .

“Owner” or “Holder”,
[sic] when used with respect to any Bond, means the Person in whose name such Bond
is registered in the Bond Register.[4]

. . . . 

SECTION 1.10          Benefits of Indenture.

Nothing in this Indenture or in
the Bonds, express or implied, shall give to any Person, other than the parties
hereto, their successors hereunder, the Corporation, any separate trustee or
co-trustee appointed under Section 9.12, and the Owners of Outstanding Bonds
any benefit or any legal or equitable right, remedy, or claim under this
Indenture.

HHI contended that as a bond
owner, it was entitled to sue to enforce the indentures pursuant to section
1.10.  U.S. Trust contended that because HHI’s name did not appear on the bond
register as owner of the bonds in question, as required by section 1.01, HHI
cannot sue as an “Owner” under section 1.10.  It is undisputed that at the time
U.S. Trust’s plea/motion came to be heard, the bond register listed DTC’s
nominee, Cede & Co., as owner of the bonds.  The trial court granted U.S.
Trust’s plea/motion and ordered the case dismissed “with prejudice.”

            Several months
after this ruling, HHI filed a “Motion to Modify, Correct, Reform, or, In The
Alternative, Vacate.”  In this motion, HHI asserted that subsequent to the
court’s ruling, bond certificates had been issued establishing HHI as the
direct owner of the bonds.  HHI further asserted that its name had been added
to the bond register as owner of the bonds.  On these bases, HHI requested that
it be allowed to move forward with its cause of action.  The trial court denied
HHI’s motion, and this appeal ensued.

In six issues on appeal,
HHI contends that (1) to sue under the indentures, it was not required to be
listed by name on the bond register; (2) based on positions taken in the
federal lawsuit in California, U.S. Trust is barred from arguing that HHI does
not own the bonds; (3) because HHI is now listed in its own name on the bond
register, its claims should be permitted to go forward; (4) the trial court erred
in refusing to permit HHI to amend its pleadings to reflect the change in the
bond register; (5) the court erred in dismissing HHI’s claims “with prejudice”;
and (6) the trial court erred if it granted summary judgment on any grounds
U.S. Trust raised in prior motions.  We will begin our analysis by addressing
the parties’ arguments concerning whether HHI was entitled to sue to enforce
the bond indentures.

II.  Standards of Review

            As
stated, the trial court granted U.S. Trust’s plea to the jurisdiction and, in
the alternative, motion for summary judgment without stating the grounds
therefor.  We have previously explained that while the question of whether a party
is entitled to sue on a contract is often informally referred to as a question
of “standing,” it is not truly a standing issue because it does not affect the
jurisdiction of the court; it is, instead, a decision on the merits.  See
Yasuda Fire & Marine Ins. Co. of Am. v. Criaco, 225 S.W.3d 894, 898
(Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing MCI Telecomm. Corp.
v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 560-54 (Tex. 1999), et. al).  When
it is established that a breach of contract plaintiff lacks entitlement to sue
on a contract, the proper disposition may be summary judgment on the merits,
but it is not dismissal for want of jurisdiction.  See id.  Accordingly,
we consider the trial court’s grant of U.S. Trust’s dual-purpose motion under
the standards governing summary judgments instead of the standards governing
pleas to the jurisdiction.

            U.S.
Trust’s motion is in the manner of a traditional motion for summary judgment.  We
analyze the grant of a traditional motion under well-established standards of
review.  See generally Tex. R. Civ. P. 166a; Nixon v. Mr. Prop. 
Mgmt. Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985).  The movant bears the
burden to show that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  We review
the motion and the evidence de novo, taking as true all evidence favorable to
the nonmovant, and indulging every reasonable inference and resolving any
doubts in the nonmovant’s favor.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).

Generally, in order to
enforce a contract, a litigant must be either a party to that contract or an
intended third-party beneficiary.  See Wells v. Dotson, 261 S.W.3d 275,
284 (Tex. App.—Tyler 2008, no pet.); Yasuda Fire, 225 S.W.3d at 898. 
Here, HHI makes no assertion that it is a party to the indentures.  Indeed, the
indentures themselves demonstrate that the only parties were the bond trustee
and the particular Heritage entity associated with the particular bond
issuance.  There is a presumption against conferring third-party beneficiary
status on noncontracting parties.  S. Tex. Water Auth. v. Lomas, 223
S.W.3d 304, 306 (Tex. 2007).  In determining whether a third party may enforce provisions
of a contract between others, the intent of the contracting parties controls.  Id. 
The intent to confer a direct benefit upon a third party must be clearly and
fully spelled out before a third party can enforce the contract.  Id.  As
will be discussed in greater detail below, the contracts at issue here, the
indentures, explicitly spell out the third-party beneficiaries entitled to sue
for enforcement.

In construing a
contract, our primary concern is to ascertain the parties’ intent as expressed
in the instrument.  Seagull Energy E & P, Inc. v. Eland Energy, Inc.,
207 S.W.3d 342, 345 (Tex. 2006).  To ascertain those intentions, we examine the
entire contract in an effort to harmonize and give effect to all of its
provisions so that none will be rendered meaningless.  Id.  No single
provision should be given controlling effect, but all provisions must be
construed in reference to the whole.  Id.  When a written contract is so
worded that it can be given a certain or definite legal meaning or
interpretation, it is not ambiguous, and the court construes it as a matter of
law.  Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003). 
A contract is ambiguous when its meaning is uncertain and doubtful or is
reasonably susceptible to more than one interpretation.  Heritage Res., Inc.
v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).

III.  The Meaning of “Owner”[5]

            In
its first issue, HHI contends that as an owner of the bonds in question, it is
entitled to sue to enforce the bond indentures.  Therefore, according to HHI, the
trial court erred in holding that it was not entitled to sue under the
indentures.  More specifically, HHI asserts that (1) its ownership of the bonds
in street name fulfilled the ownership requirements of section 1.01 of the
indentures; (2) in the alternative, the definition provided in section 1.01
does not apply in the context of this case; and (3) also in the alternative,
the definition contained in section 1.01 is not a material provision of the
agreement.  We will consider each argument in turn.

HHI first argues that the definition of “Owner”
contained in section 1.01 does not require that the owner’s actual name appear
in the bond register.  Or, stately conversely, HHI argues that when a “placeholder’s”
name appears in the register in place of the beneficial owner’s name, the beneficial
owner should still be considered the “Owner” under section 1.01.  As set forth
above, section 1.01 defines “Owner” as “the Person in whose name such Bond is
registered in the Bond Register.”  We do not agree with HHI’s interpretation
that the provision allows for entities other than those whose names appear in
the register to hold the rights of “Owners” under the indentures.  To the
contrary, a more direct interpretation of this passage would be that for
purposes of the indentures, the “Owner” of a particular bond is the entity
whose name is listed for that bond in the register.  Had the drafters of the
indentures desired for the outcome sought by HHI, i.e., that all
beneficial owners would have rights thereunder regardless of whether listed on
the register, they could have done so in a straightforward fashion.  For
example, they could have said that the “Owner” of a bond was “the beneficial
owner” or “the person for whom the bond is registered.”  Instead, Section
1.01 clearly permits only parties whose names appear on the bond register to be
considered “Owners.”[6]

HHI additionally argues that the definition in
section 1.01 does not apply in the context of this case.  It bases this
argument primarily on the opening words of the section, which state that the
definitions contained therein apply “except as otherwise expressly provided or
unless the context otherwise requires.”  According to HHI, the definition of
“Owner” in section 1.01 should not apply in the context of section 1.10. 
However, section 1.10, which defines who has rights to enforce the indentures
and who does not, appears to be the very context for which the definition
contained in section 1.01 was intended.  Both sections discuss ownership of the
bonds governed by the indentures.

Nevertheless, HHI further argues that in the greater
context of bond ownership, the requirements of section 1.01 do not make sense. 
HHI cites Caso-Bercht v. Striker Industries, 147 S.W.3d 460 (Tex.
App.—Corpus Christi 2004, no pet.), for the proposition that a large percentage
of bond ownership is, like HHI’s ownership was here, in street name.  According
to HHI, applying section 1.01 to prevent beneficial owners, who do not also hold
the bond certificates or have their own name listed in the bond register, from
asserting rights under the indentures would bar the majority of beneficial
owners from being able to assert their rights.[7] 
HHI is putting the cart before the horse.  The rights that are granted in a particular
contract to third parties are up to the parties to the contract to decide.  See
generally MCI Telecomm. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 561
(Tex. 1999) (“In determining whether a third party can enforce a contract, the
intention of the contracting parties is controlling.”).  The parties are free
to give third parties rights or not give them rights.  See id.  The
parties are specifically free to determine whether a third party is vested with
authority to sue for enforcement of the contract.  See EPGT Tex. Pipeline,
L.P. v. Harris County Flood Control Dist., 176 S.W.3d 330, 340 (Tex.
App.—Houston [1st Dist.] 2004, pet. dism’d).  The degree to which bond
ownership in street name is common practice does not prevent parties to
indentures from either granting or denying owners in street name the right to
sue to enforce the indentures.  In a situation such as this, a purchaser of
bonds is charged with knowledge of the contents of any controlling indenture.  It
is elemental that the buyer who is not a party to the agreement is not in a
position to dictate the terms of the contract.

Lastly, HHI contends that because section 1.01 is not
a material provision of the agreement, it should be disregarded.  “[U]nder
Texas law, essential or material terms are those that parties would reasonably
regard as vitally important elements of their bargain.”  Potcinske v.
McDonald Prop. Invs., Ltd., 245 S.W.3d 526, 531 (Tex. App.—Houston [1st
Dist.] 2007, no pet.) (citing Neeley v. Bankers Trust Co., 757 F.2d 621,
628 (5th Cir. 1985)).  We are unpersuaded.  Whether and under what
circumstances a third party may sue to enforce an agreement would appear to be
a highly material issue in any given contract.  HHI maintains that by
permitting owners not listed in their own names in the register to sue would
not increase U.S. Trust’s potential liability.  The extent of U.S. Trust’s
potential liability is not the issue; contract interpretation is.  HHI furthers
insists that at any given time, U.S. Trust could have found out who all the
beneficial owners were by merely making a few phone calls.  We decline to
rewrite the contract in order to impose additional burdens respecting third
parties.  See generally MCI, 995 S.W.2d at 561.  Having rejected each of
HHI’s arguments regarding the interpretation of sections 1.01 and 1.10, we
overrule its first issue.

IV.  Issue Preclusion and Judicial Estoppel

A.  The Law

In its second issue, HHI contends that under the
legal doctrines of issue preclusion and judicial estoppel, U.S. Trust was
barred from arguing that HHI was not an owner of the bonds.  HHI premises its
arguments on positions U.S. Trust took in a prior lawsuit in a California federal
court.  “Issue preclusion . . . bars ‘successive litigation of an issue of fact
or law actually litigated and resolved in a valid court determination essential
to the prior judgment,’ even if the issue recurs in the context of a different
claim.”  Taylor v. Sturgell, 128 S.Ct. 2161, 2171 (2008) (quoting New
Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)).  We consider the preclusive
effect of a federal-court judgment pursuant to federal common law.  Id.  When the federal court in
question sat in diversity jurisdiction, we look to the state law utilized by
the federal court.  Id. at 2171 n.4.  The prior judgment at issue here
was rendered by a federal court sitting in diversity jurisdiction and utilizing
Wisconsin law.  See In re Heritage Bond Litigation, No. 02-ML-1475 DT
(C.D. Cal. July 6, 2004 order granting partial summary judgment).  Wisconsin courts
look to “principles of fundamental fairness” in considering whether issue
preclusion should apply in a particular case.  Michelle
T. v. Crozier,
495 N.W.2d 327, 331 (Wisc. 1993).[8] 
As a preliminary matter, Wisconsin courts analyze whether the issue presented in the current litigation is “in substance the same” as an issue resolved in a
prior proceeding.  Paige K.B. ex rel. Peterson v. Steven G.B., 594
N.W.2d 370, 376 (Wisc. 1999).  It must also be assessed whether the issue in
question was “actually and necessarily determined” in the prior proceeding.  Id. at 374 (quoting Montana v.
United States,
440 U.S. 147, 153 (1979)).

When applicable, “[t]he doctrine of judicial estoppel
prevents a party from asserting a claim in a legal proceeding that is
inconsistent with a claim taken by that party in a previous proceeding.”  Pegram v.
Herdrich, 530
U.S. 211, 227 n.8 (2000).[9] 
It “is an equitable doctrine invoked by a court
at its discretion.”  New Hampshire, 532 U.S. at 750.  Consequently, the
circumstances under which judicial estoppel may properly be applied “are
not reducible to any general formulation of principle.”  Id.  Nonetheless,
courts have identified several factors to consider when determining whether to
apply the doctrine, including:  (1) whether the party’s subsequent position is
“clearly inconsistent” with its prior position; (2) whether the party successfully
persuaded the prior court to accept the position in question, such that it
would appear “either the first or the second court was misled”; and (3) whether the party “would derive an
unfair advantage or impose an unfair detriment on the opposing party if not
estopped.”  Id. at 750-51.

B.  The Facts

In support of its arguments under both doctrines, HHI
introduced portions of the record from a federal district court proceeding in
California:  In re Heritage Bond Litigation, No. 02-ML-1475 DT (C.D. Cal.
transferred August 20, 2002).[10] 
In that litigation, a receiver appointed to oversee the “Heartland Funds,” a
group of related municipal bond funds, sued U.S. Trust for alleged violations
of the same bond indentures at issue in the present case.  U.S. Trust filed a
motion for partial summary judgment asserting that the Heartland Receiver was
not entitled to sue to enforce the indentures because the Heartland Funds no
longer owned the bonds in question.  Specifically, U.S. Trust maintained that the
Heartland Funds had transferred ownership of the bonds to the State of
Wisconsin Investment Board (“SWIB”) and that SWIB in turn had transferred the
bonds to HHI.  The district court granted partial summary judgment favoring
U.S. Trust.  In re Heritage, No. 02-ML-1475 DT (C.D. Cal. July 6, 2004
order granting partial summary judgment).

In the present case, HHI specifically contends that (1)
positions taken by U.S. Trust in the motion, (2) statements made by U.S.
Trust’s counsel in a declaration in support of the motion, and (3) the district
court’s granting of the motion, all support application of the doctrines of issue
preclusion and judicial estoppel in the present case.  In the motion, U.S.
Trust asserted that when the Heartland Funds sold the bonds to SWIB, they
transferred whatever rights they “may have had by reason of the trust
indentures”; thus, according to U.S. Trust, having sold the bonds, the
Heartland Funds (and by extension the Heartland Receiver) could not have had
any remaining right to sue premised on ownership of the bonds.  In support of
this contention, U.S. Trust cited to language in the sales agreement, the bonds,
and the indentures, as well as to common law rules governing sales of
securities.  U.S. Trust also cited to the language of section 1.10 of the
indentures, wherein it states that “[n]othing in this Indenture or in the
Bonds, express or implied, shall give to any Person, other that the parties
hereto . . . and the Owners of Outstanding Bonds any benefit or any legal or
equitable right, remedy, or claim under this Indenture.”  U.S. Trust further
argued that the receiver’s lack of standing was “confirmed” by the fact SWIB
had transferred the bonds to HHI and HHI had then sued U.S. Trust on the bonds
in Texas.  Pointing to the definition of “Owner” contained in the indentures,
U.S. Trust argued that since the Heartland Funds had rights under the
indentures only in their capacity as bond Owners, they lost those rights when
they stopped being Owners.  In other words, any such rights had passed to SWIB.

In his declaration, U.S. Trust’s counsel echoed some
of the same assertions made in the motion and added that a comparison of the
pleadings in the California federal case and the Texas case “confirms that HHI
(transferee) and the Heartland Receiver (transferor) are both suing U.S. Trust
for the same alleged conduct in relation to the same population of Heritage
bonds asserting the same alleged rights under the trust indentures . . . .”  In
the order granting partial summary judgment, the district court essentially
concurred with U.S. Trust’s assertion that the sales agreement between the
funds and SWIB, the bonds, the indentures, and Wisconsin common law all supported
the conclusion that the sale of the bonds passed all of the Heartland Funds’
rights to SWIB.[11] 
In the order, the court states that the Heartland Receiver had conceded that “within
the meaning of the Indentures, the Heartland Funds are not the ‘Owner(s)’ of
the Sold Bonds and were not the ‘Owner(s)’ of the Sold Bonds at the time the Heartland
Receiver Action was filed.”  The court further mentions the fact that the bonds
were subsequently conveyed to HHI, and HHI was the plaintiff in a pending
proceeding in Texas.  The court concluded that “[a]lthough the Heartland
Receiver conceivably had rights as a registered owner at one time . . .
the Heartland Receiver expressly transferred said rights when it sold out to
SWIB even before bringing this action.”  (emphasis added).  The court additionally
stated that “[t]o further solidify this point . . . U.S. Trust has been sued in
Texas state court by the current owner of the Heritage bonds sold by the
Heartland funds to SWIB.”

C.  Application of the Law to the Facts

Applying issue
preclusion under the facts presented by HHI, we must first consider whether (1)
the issue presented in the current
litigation is “in substance the same” as an issue resolved in the
prior proceeding, and (2) the issue in question was “actually and necessarily
determined” in the prior proceeding.  See Paige K.B., 594 N.W.2d at
374, 376.  In this proceeding, HHI asserts that it has the right to sue under
the indentures even though it is not listed by name on the bond register.  The
key issue resolved in the California federal case, and the one on which the
court based its order, was whether the Heartland Funds (via the Heartland
Receiver) could enforce the indentures after having transferred away all of their
rights under the indentures.  These issues are not substantially the same, and
thus, the key issue here was not “actually and necessarily determined” in the
prior litigation.  In order to determine whether the Heartland Receiver had any
right to sue—the Heartland Funds having transferred all of their rights in the
bonds—the federal court was not required to, and indeed did not, determine
whether being listed by name on the bond register was a prerequisite for
bringing claims based on the indentures.  Further, in deciding that the Heartland
Receiver did not have any rights under the indentures, the federal court was
not required to, and indeed did not, determine whether HHI had any rights under
the indentures.  While the court mentioned in its order that “the current owner
of the Heritage bonds” (HHI) had sued U.S. Trust in Texas, the court did not
hold that HHI had the right to sue as an “Owner” under the indentures.  The
conclusion of the court was merely that whatever ownership rights had been held
by the Heartland Funds had been passed to SWIB and then to HHI.[12]  Accordingly, HHI
has not demonstrated that issue preclusion should apply under the facts of this
case.

In determining the applicability of judicial estoppel
to the facts of this case, we consider the following factors:  (1) whether U.S.
Trust’s current position is “clearly inconsistent” with its prior position; (2)
whether U.S. Trust successfully persuaded the prior court to accept the position,
such that it would appear that either this court or the prior court was misled;
and (3) whether U.S. Trust would derive an unfair advantage or impose an unfair
detriment on HHI if not estopped.  See New
Hampshire, 532 U.S. at 750-51. 
We begin by examining whether U.S. Trust has taken clearly inconsistent
positions in the two lawsuits.  As explained above, in the federal proceeding
in California, U.S. Trust asserted that the Heartland Receiver did not have any
right to sue under the indentures because the Heartland Funds had transferred
any conceivable rights they had respecting the bonds when they sold the bonds
to SWIB.  In the present case, U.S. Trust asserts that HHI does not have the
right to sue under the indentures because it is not listed by name on the bond
register.  These are not clearly inconsistent positions.  HHI would have us
read into U.S. Trust’s federal court position a suggestion that the Heartland
Receiver would have had the right to sue if the Heartland Funds had not already
transferred the bonds, regardless of whether the funds or the receiver had been
listed by name on the bond register, or, alternatively phrased, that all that
was required to sue was bond ownership in any form.  But this position is
neither what U.S. Trust actually argued in federal court nor, as explained
above, what they needed to argue in order to demonstrate that the Heartland
Receiver did not have the right to sue on the indentures.  Thus, we cannot say
that U.S. Trust’s positions in the two lawsuits were clearly inconsistent.

Next, we consider whether U.S. Trust’s two positions
make it appear that one or the other court was misled.  Even assuming that U.S.
Trust’s statements in the federal case regarding HHI’s lawsuit in Texas could
be read as suggesting somehow that HHI had a right to sue on the bonds, the decision
in the federal court did not turn on this implication.  As explained in the
federal court order granting partial summary judgment, the court based its
decision on the fact that the Heartland Funds had transferred away whatever
conceivable rights they had in the bonds prior to filing suit.  Although the
court mentioned the Texas proceeding, it did not base its opinion on the
existence of that proceeding.  Similarly, there is no indication that the trial
court was misled by U.S. Trust’s argument in the present case.  Consequently,
we cannot say that the two positions give the appearance that either court was
misled on the actual issue before it.

Lastly, we see no unfair advantage for U.S. Trust or unfair
detriment for HHI developing if U.S. Trust is not estopped in the current
case.  The key issues in the two cases are substantially different such that
resolution of the issue in the current case (i.e., HHI’s right to sue
when not listed by name on the bond register) does not require reference to the
issue in the prior case (i.e., the Heartland Receiver’s right to sue
subsequent to the Heartland Funds’ having transferred away all rights under the
bonds).  Accordingly, U.S. Trust is not judicially estopped from making its
ownership argument in the present case.  We overrule HHI’s second issue.

V.  Actions Subsequent to Summary Judgment

In its third issue, HHI asserts
that it now has the right to sue for enforcement of the indentures because,
subsequent to the grant of summary judgment, it received the bonds in paper
form and had its own name listed on the bond register as owner of the bonds.[13]  HHI presented
evidence of these transactions to the court in association with its Motion to
Modify, Correct, Reform, or, in the Alternative, Vacate, the Court’s December
27, 2007 Judgment (“Motion to Modify”).  As HHI acknowledges in its reply brief,
a trial court is not required to consider late-filed summary judgment evidence
but may do so “as long as the court affirmatively indicates in the record that
it accepted or considered the evidence.”  Auten v. DJ Clark, Inc., 209
S.W.3d 695, 702 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (quoting Stephens
v. Dolcefino, 126 S.W.3d 120, 133-34 (Tex. App.—Houston [1st Dist.] 2003,
pet. denied)).  Rule 166a confers broad discretion on the trial court in
deciding whether to accept late-filed summary-judgment evidence.  See Tex.
R. Civ. P. 166a (imposing deadlines for filing evidence “[e]xcept on leave of
court”); Tex. Prop. & Cas. Ins. Guar. Ass’n v. Sw. Aggregates, Inc.,
982 S.W.2d 600, 611 (Tex. App.—Austin 1998, no pet.).  When a court considers
late-filed summary judgment proof, it will expressly indicate that it is doing
so in a written order or in open court.  See, e.g., Auten, 209 S.W.3d at
702-03 (reviewing delinquent evidence on appeal because the trial court stated
in its order denying the motion that it considered the evidence); Stephens,
126 S.W.3d at 133-34 (reviewing delinquent evidence on appeal because trial
court indicated in open court that the evidence would be included in the
summary judgment record).  Here, the trial court did not make any such express
statement, either in the order denying the Motion to Modify or in the hearing
on the motion.  Thus, we cannot say that at any point the court affirmatively
indicated its acceptance or consideration of the late-filed evidence.  Accordingly,
we overrule HHI’s third issue.

VI.  Amendment

In its fourth issue, HHI
contends that the trial court erred in refusing to permit amendment of HHI’s
pleadings after the trial court granted the plea to the jurisdiction/motion for
summary judgment.  HHI sought to amend its pleadings to assert that it had
obtained the bonds in paper form and had its own name listed on the bond
register.  HHI’s arguments under this point are predicated on the rule that if
a plea to the jurisdiction appears meritorious, a plaintiff should be allowed
to amend its pleadings to attempt to cure the jurisdictional defect.  See
generally Tex. A & M Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 839 (Tex.
2007).  However, as explained above, the resolution of this case does not rest on
jurisdictional principles, raised in a plea to the jurisdiction, but on the
conclusion that HHI had no right to sue on the contract that it was attempting
to enforce, as raised in the motion for summary judgment.  Thus, HHI’s
arguments under this issue miss the mark.  We overrule HHI’s fourth issue.

VII.  Remaining Issues

            Because
HHI was not entitled to sue to enforce the bond indentures, the trial court did
not err in granting summary judgment favoring U.S. Trust.  Furthermore, because
the trial court’s judgment is supported by this ground for summary judgment, we
need not consider either U.S. Trust’s additional grounds for summary judgment
or HHI’s sixth issue challenging those other grounds.  Accordingly, we overrule
HHI’s sixth issue.

            In
its fifth issue, HHI contends that the trial court erred in dismissing HHI’s
claims “with prejudice” because a dismissal for want of jurisdiction should be
without prejudice against refiling.  However, as explained above, we interpret
the trial court’s judgment as a grant of summary judgment on the merits, not as
a grant of a plea to the jurisdiction.  A grant of summary judgment on the
merits is with prejudice against refiling.  See Yasuda Fire & Marine
Ins. Co. of Am. v. Criaco, 225 S.W.3d 894, 898 (Tex. App.—Houston [14th
Dist.] 2007, no pet.) (collecting cases).  Accordingly, we overrule HHI’s fifth
issue.

Having overruled all of
HHI’s appellate issues, we affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Seymore and Sullivan.

 









[1] U.S. Trust Company of
Texas was originally designated as the trustee.  U.S. Trust Corporation was the
parent of U.S. Trust Company of Texas.





[2] Over the course of the
litigation, various additional plaintiffs and defendants have been named in the
pleadings.  The parties currently involved in the litigation are as described
in this opinion.





[3] Because the bases of the
trial court’s prior rulings, both granting the plea to the jurisdiction and
granting the motion to reconsider, are not essential to the disposition of the
issues presented in this appeal, we will not examine them in detail.





[4] The maintenance of a
“bond register” for the registration of bonds and bond transfers is required
under section 3.07 of the indentures.





[5] As set forth above, the
indentures in question defined the terms “Owner” and “Holder” synonymously. 
For clarity and ease of reference, our analysis will utilize only the term “Owner,”
although it applies equally to the term “Holder.”





[6] At least two other courts
considering similar language in bond indentures have come to like conclusions. 
In Theodore v. TD Ameritrade, Inc., the plaintiff complained that he did
not receive notice of an early redemption when the indenture required such notice
“to each Holder of Securities.”  No. 11760-07, 2008 WL 465281, at *2 (N.Y. Sup.
Ct. Feb. 11, 2008).  The indenture defined “Holder” as “the person in whose
name a Security is registered on the Registrar’s books.”  Id. 
Interpreting the language as “plain and unambiguous,” the court concluded that
the definition of “Holder” did not include beneficial owners who held bonds in
street name.  Id. at *2-3.  The court further noted that this interpretation
was supported by a publication of the Securities and Exchange Commission, which
advised investors that registration in street name meant that a bond was
“registered in the name of your brokerage firm on the issuer’s books.”  Id.
at *2 (quoting but not citing publication).  The plaintiff in Raymond James
& Associates v. The Bank of New York Trust Co., also alleged that it
failed to receive proper notice as required under the applicable indenture.  No.
8:07-CV-239-T-27TBM, 2008 WL 429629, at *1 (M.D. Fla. Sept. 18, 2008).  The
plaintiff specifically contended that it was an intended third-party
beneficiary entitled to notice.  Id. at *2, 7-8.  The court concluded,
however, that only “holders” of the notes were granted such rights in the
indenture, and the holder of the plaintiff’s notes was “Cede & Co.,” as DTC
nominee; the plaintiff was merely the certificate owner.  Id. at *8.

 





[7] While the court in Caso-Bercht
discussed that street name ownership of bonds is commonplace, the opinion does
not support HHI’s larger proposition that because such ownership is so
commonplace, the parties to the indentures could not agree to exclude ownership
of this type from rights under the contract.  147 S.W.3d 460.  In Caso-Bercht,
the issue before the court was whether the plaintiffs had standing and capacity
to bring certain statutory and common law causes of action.  The case did not
involve either a breach of contract cause of action or the need to interpret a
contractual definition of “owner.”





[8] The Michelle T.
court identified the following “fundamental fairness” factors to be considered
by courts before applying issue preclusion:

(1) could the party against
whom preclusion is sought, as a matter of law, have obtained review of the
judgment; (2) is the question one of law that involves two distinct claims or
intervening contextual shifts in the law; (3) do significant differences in the
quality or extensiveness of proceedings between the two courts warrant
relitigation of the issue; (4) have the burdens of persuasion shifted such that
the party seeking preclusion had a lower burden of persuasion in the first
trial than in the second; or (5) are matters of public
policy and individual circumstances involved that would render the application
of collateral estoppel to be fundamentally unfair, including inadequate
opportunity or incentive to obtain a full and fair adjudication in the initial
action?

495 N.W.2d at 330-31.







[9] When considering a
judicial estoppel claim, Texas Courts have looked to the law governing the previous
proceeding, explaining that “the primary purpose of judicial estoppel is to
preserve the integrity of the prior judicial proceeding.”  Dallas Sales Co.
v. Carlisle Silver Co., 134 S.W.3d 928, 931 (Tex. App.—Waco 2004, pet.
denied) (collecting cases, including Stephenson v. LeBoeuf, 16 S.W.3d
829, 841 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)).  As discussed
above, the prior proceeding here was in federal court.  Somewhat paradoxically,
federal courts, for the most part, apply the law governing the subsequent
proceeding, explaining that doing so enables the court to protect itself from manipulation. 
See Rissetto
v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 602-04 (9th Cir. 1996); see
also G-I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 261 (3rd Cir.
2009) (collecting cases).  Because precedent dictates that we apply federal law
in this context, we will apply federal principles of judicial estoppel in this
case.  It does appear, however, to be an area ripe for Texas Supreme Court
consideration.





[10] The action began in the
Northern District of Illinois but was transferred to the Central District of
California pursuant to a multi-district litigation order.  In re Heritage,
No. 02-ML-1475 DT (C.D. Cal. July 6, 2004 order granting partial summary
judgment).





[11] The district court
apparently entered only an order of partial summary judgment because there were
other bonds at issue in the case that the Heartland Funds had not transferred
to SWIB.





[12] It should also be
pointed out that HHI does not cite to any evidence regarding whether the
Heartland Funds were at one time listed by name on the bond register.  Absent
such evidence, it cannot be assumed that HHI and the Heartland Funds had the
exact same rights of ownership.





[13] The trial court granted
summary judgment favoring U.S. Trust on December 27, 2007.  After that order,
HHI filed several motions requesting that the court reform or vacate the
judgment.  At various times, HHI also filed several pieces of evidence
purporting to demonstrate that it then held the bonds in paper form and that
the bonds were then registered in HHI’s name on the bond register.  Because of
our resolution of the issues in this case, we need not address the substantive
worth of this evidence.